(96 App. Div. 427.)

### ROGERS v. CITY OF ROME.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. MUNICIPAL CORPORATIONS—ICY SIDEWALK—INJURY TO PEDESTRIAN—NEGLI-GENCE.

The fact that a city left an accumulation of ice and snow on a sidewalk did not, in an action by one who fell on the accumulation, show negligence, where the accumulation was from four to five inches in thickness, and only sloped from its center about a half inch, and there was about six feet of clear sidewalk on each side of it, and it had been sprinkled twice during the day with ashes.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Where there was an accumulation of ice and snow in the middle of a sidewalk, and a pedestrian, in the nighttime, walked along the accumulation, without seeking to ascertain whether the same condition existed over the entire walk, and fell, his negligence precluded recovery.

Appeal from Trial Term, Oneida County.

Action by Herbert Rogers against the city of Rome. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

M. J. Larkin, for appellant.

Howard C. Wiggins, for respondent.

McLENNAN, P. J. The plaintiff sustained the injuries of which he complains, which concededly were serious, at about 7:15 o'clock in the evening on December 22, 1902, by slipping and falling upon the sidewalk on the northerly side of West Dominick street, one of the principal streets in the defendant city. The accident occurred in front of the Russel & Walters store, one of the chief business places in the city. At the place of the accident, and extending for a considerable distance in either direction, the sidewalk was 20 feet wide, was composed of solid flagstone, and was level and perfect in its construction. At the time in question the sidewalk and adjacent premises were lighted by electric lights in the usual manner. There was upon the sidewalk at the place of the accident an accumulation of ice and snow, which extended along its center for a considerable distance in either direction. Such accumulation was described by different witnesses as being from 1½ to 4 or 5 inches in thickness, and from 2½ to 7 feet in width, sloping gradually to either side; concededly leaving a space of about 6 feet upon either side of such sidewalk which was not interfered with by the obstruction of which

the plaintiff complains. The accumulation of ice and snow was rough and uneven on the top, and it had been allowed to remain on the walk for several days prior to the accident. At that time, by reason of the weather conditions prevailing in the city, all the sidewalks were slippery, and the space upon either side of the obstruction complained of was in that condition because of a thin film of ice which had formed over the same. Between 7 a. m. on December 21 and 7 a. m. on December 22, 1902, .60 of an inch of rain had fallen. It also rained on the 22d, and the temperature was such as to cause such rain to form into ice upon all the sidewalks of the city. It is apparent that the conditions were such in the defendant city as that immediately preceding the accident the sidewalks were unavoidably icy and slippery. On the morning of the day of the accident, sawdust and ashes were sprinkled over all the ice upon the sidewalk in question, and again in the afternoon, between 3 and 6 o'clock, the sidewalk in question was thoroughly sprinkled with such material. It appears from the evidence that prior to the accident the snow and ice had usually been removed from the walk down to the flagging, but that upon the occasion in question it had been allowed to accumulate to the extent indicated—the precaution being taken to sprinkle sawdust and ashes upon it—and that the condition which actually existed was known to, or ought to have been known by, the defendant's officials, in the exercise of ordinary care and prudence.

Under the circumstances disclosed by the evidence in this case, we think the plaintiff failed to establish that the defendant was guilty of actionable negligence. If upon such evidence the defendant could be held liable, in effect the duty is imposed upon a municipality to keep its sidewalks free from ice and snow under any and all circumstances. In the case at bar the obstruction complained of was almost the slightest that could be imagined under the conditions prevailing, and it was remedied by the common method of sprinkling sawdust and ashes upon it. The obstruction complained of was such as would ordinarily exist under the conditions prevailing at the time, and was so slight—only sloping about a half inch to the foot from the center in either direction—that it could hardly be discovered except by actual measurement, and from the edge of such slope upon either side there was a clear and unobstructed way for any person desiring to pass over such walk. When it is considered that such walk was sprinkled with sawdust and ashes in the morning, and again almost immediately preceding the time when the plaintiff passed over it, we think the defendant was not negligent in allowing it to remain and be in that condition. We do not agree to the proposition that the leaving of such a small area of snow and ice, of the character described by the witnesses, upon the walk in question, under the circumstances disclosed by the evidence in this case, establishes negligence on the part of the defendant; nor do we interpret the authorities cited and relied upon by respondent's counsel as establishing such doctrine.

In the case of Klaus v. City of Buffalo, 86 App. Div. 221, 83 N. Y. Supp. 620, the walk in question, as described in the opinion of this

court, was "ten and one-half feet wide, * * * icy, slanting, uneven, with hills or hummocks of ice two or more inches high, * * * The ice on the walk was three or four inches thick, excepting that part lying towards the street line, where near the building it had melted so it was not so thick. This condition of ice upon the walk had existed for a long time—practically all winter. Most of the ice had accumulated prior to March 12, 1901, ten days before the accident. * * * There seems to have been no effort to keep the walk free from ice forming from snow allowed to accumulate upon the walk. There was a gross neglect as to the condition of the walk, and the condition had existed for a long time." In the case from which we have just quoted, the evidence contained in the record upon appeal discloses that the building in front of which the danger existed was vacant and unoccupied, and that no one attempted to clean the snow or ice off the walk at any time during the winter prior to the accident, while in the case at bar the adjoining property was occupied by a merchant who conducted a store therein, and who, the evidence shows, attempted to keep the walk free from ice and snow; and, on account of the small area in question being frozen to the flagging, so that it could not, with reasonable care, be removed, it appears without contradiction that shortly before the accident to plaintiff, and at least once earlier in the day, he caused sawdust or ashes, or the two mixed, to be sprinkled over the surface of the accumulation, as a precaution against accidents to pedestrians. It also appears that at some time during the afternoon of the day of the accident the temperature of the atmosphere was below freezing, and remained so up to the time of the accident.

The obstruction complained of in the case of Scanlon v. Village of Weedsport, 85 App. Div. 623, 82 N. Y. Supp. 577, was "a ridge some eight or ten inches in height, and six to eight inches in width, running through the center of the walk for its entire length, and had been permitted to remain, although it might have been removed with the exercise of a fair degree of care and diligence, and that it was by reason of this lack of diligence and effort that the plaintiff received the injury complained of." See opinion supra. The walk upon which this ridge existed was five feet in width. The street lights in the village were not lighted that night. The accident happening after dark.

In Beck v. City of Buffalo (Sup.) 63 N. Y. Supp. 499, the condition of the walk upon which the plaintiff fell is thus described in the opinion of this court, and is warranted by the evidence in the record upon that appeal:

"The snow and ice had been allowed to accumulate, and by constant usage a path had been formed and packed in the center of the walk, sloping up three or four inches on the sides of this dish-shaped space. The worn track was slippery, and eighteen to twenty inches in width. This had remained substantially unchanged for three or four weeks."

An examination of the record upon appeal in the case referred to does not disclose the exact width of the walk, but it appears therefrom that along the inside line of the walk there stood an iron railing about 18 inches high, and that, when the plaintiff fell as he walked

in the path or dish-shaped trench, he fell upon his side, and, falling upon the railing, suffered a fracture of several ribs, so that we can estimate the width of the walk within fairly approximate limits. However, that case differs decidedly from the one at bar, in that the walk was entirely covered with snow, except where it had been packed and depressed as above described, and pedestrians were therefore required to wade through the snow, or follow one another in single file along the path described by the witnesses.

An examination of the evidence in the case of Walsh v. City of Buffalo, 17 App. Div. 112, 44 N. Y. Supp. 942, shows that the walk upon which the plaintiff fell was entirely covered with ice, sloping each way from the center, thus presenting a sheet of ice described as extending over the walk "from the outer edge to the inner."

The case of Keane v. Village of Waterford, 130 N. Y. 188, 29 N. E. 130, presented the case of a walk about 11 feet wide, upon which a platform along the front of an adjoining hotel encroached about 4 feet, leaving for the use of pedestrians a walk about 7 feet in width. Upon this walk, and about 1 foot from the outer edge of the platform, a ridge of ice or of snow and ice had accumulated, which was 5 or 6 inches in height, and sloped towards the platform and to the gutter line, entirely covering the portion of the walk available to pedestrians, and amounting to a dangerous obstruction.

The facts of the cases above referred to are so greatly different from those in the case under review that we are unable to accept the decisions in those cases as applicable to this case. We have found no other case presenting facts to any extent similar to those of this case which holds a municipality to such a strict rule as is contended for by the plaintiff herein. If the defendant is chargeable with negligence upon the evidence in this case, then it seems to me that such a municipality cannot relieve itself from the charge of negligence in case a pedestrian is injured upon one of its sidewalks, except by showing that such sidewalk, at least if located in the business portion of the city, was kept absolutely free from snow and ice, no matter what conditions of weather prevailed. Certainly reasonable care and prudence would not have discovered that, a person traveling upon a walk 20 feet wide, properly lighted, which had an accumulation of snow and ice extending along its center 7 feet wide, and not more than 4 or 5 inches in thickness, in the center sloping gradually to either edge, thus leaving a clear space of 6 feet upon either side upon which pedestrians could pass with safety, and especially when such accumulation of ice and snow had been properly sprinkled with ashes and sawdust, such walk was in a dangerous and unsafe condition, and such as to make the municipality liable in case any person happened to slip or fall thereon.

We conclude that the verdict of the jury, which, in effect, found that the defendant was guilty of negligence, was contrary to and against the weight of the evidence.

But an equally serious question to be determined upon this appeal is whether or not the plaintiff showed himself to have been free from contributory negligence. This question is presented by the defendant's exception to the denial of its motion for a nonsuit made at the

close of the plaintiff's case, and renewed when the proofs were all before the court. The only evidence in the case by which the plaintiff sought to establish his freedom from negligence contributing to his injury was his own testimony, which, briefly summarized, may be thus stated: That, as he passed along the walk in question, he was looking to see where he was going; that he was walking in a "natural" manner, using care to avoid falling; that he observed the ridge of frozen snow and ice near the center of the walk, and had been walking upon that ridge for a distance of about 50 feet before falling upon it; that, while it was not as light at the point where he fell as at some other places over which he had passed, the light was sufficient to enable him to see the condition of the surface of the walk; that he could see and distinguish persons on the opposite side of the street, although he could not recognize them, because, as he stated, he "was not acquainted"; that he could see water upon the walk; that the ridge "was a natural accumulation of ice and snow in the center. Where people travel over it, it gets to be a round place, and higher in the center of the walk. And it appeared somewhat rough, too—whether from travel on it, or whether it had been picked, I don't know, but it had the appearance of being rough." No witness testified to the condition in greater detail than did the plaintiff, and it appears that his knowledge of the condition of the walk was obtained while he was passing over it at the time he fell. It is to be noted, and is a fact of great significance in the determination of this appeal, that, while the plaintiff was able to discover so accurately the precise condition of that part of the walk over which he was passing, and which he then knew to be more or less dangerous, he stated that he did not know whether or not the ice extended over the entire width of the walk. In fact, the evidence strongly tends to establish that the accumulation of ice and snow did not extend clear across the walk, but that upon either side of the ridge the walk was clear, and he might have walked there in safety. The walk was 20 feet wide, and perfect in its construction. The only complaint is that there was upon it a ridge of snow and ice not more than 7 feet wide, which would leave unobstructed a space of several feet upon either side where pedestrians might walk in safety. The plaintiff knew and fully appreciated the condition of that part of the walk over which he was passing, but apparently made no effort to ascertain whether the same condition existed over the entire surface thereof, and chose to pick his way along upon the ridge, when he could readily have walked upon the unobstructed part of the walk and avoided the accident which befell him.

We are of the opinion that the plaintiff did not exercise that degree of caution which the law required of him in order to discharge the burden of affirmatively showing himself free from contributory negligence. One may not proceed along a walk of the width of this one, upon a dangerously slippery ridge of ice and snow, without exercising such care to avoid injury as to know whether other parallel portions of the walk are free from obstruction and safe for travel. A plaintiff using so little care for his own safety must be regarded as electing to continue to walk into known danger, trusting solely to

his ability to avert a catastrophe by greater diligence. Had the plaintiff taken the care to look for a path less dangerous, and been unable to find one, upon the walk in question, he would have been in an entirely different situation, as regards the legal aspect of his claim; but it appears from testimony of witnesses for the plaintiff and defendant alike that the strip of snow and ice was not wider than 7 feet, at the outside, while the walk was at least 20 feet in width, and that the balance of the walk was practically or quite clear of snow and ice. So that the conclusion is irresistible that, had the plaintiff attempted to avoid the obstruction, he could easily have done so, and would thereby have averted the serious injury which he sustained.

We think the obligation resting upon the plaintiff in this case may be expressed in the language of Parker, J., in Durkin v. City of Troy, 61 Barb. 437–455:

"The obstruction was, therefore, one to be avoided by those using the sidewalk, and seeing, or being able to see, the ice; and, if it could be readily avoided, the failure to avoid it, by one using the sidewalk, and plainly seeing the obstruction, must be accounted negligence. If there was danger in walking over this piece of ice, and the plaintiff voluntarily and unnecessarily undertook to walk over it, when he could plainly see it and easily avoid it, and fell and broke his leg, I do not see how he can meet the allegation that his own negligence contributed to the result, or avoid the conclusion that he must therefore fail to recover damages of the city 'Volenti non fit injuria.' * * * If the ice presented a dangerous obstruction, which the defendant was bound to do away, by removal or some other means, so that it was negligence on its part to leave it on the sidewalk, it must follow that it was negligence on the part of the plaintiff voluntarily and unnecessarily to venture upon this dangerous obstruction, however carefully he might attempt to carry himself upon it. The duty of the passenger [pedestrian] in such cases is to avoid the obstruction, and not to encounter its dangers." Whalen v. Citizens' Gaslight Co., 151 N. Y. 71, 45 N. E. 363.

In Kleng v. City of Buffalo, 72 Hun, 541, 25 N. Y. Supp. 445, the rule is stated in the headnote as follows:

"A person is guilty of contributory negligence, who, fully understanding the condition of smooth, sloping ice in the middle of a sidewalk (it being in the daytime, and the ice not covered with snow), deliberately walks upon the ice, and slips thereon and is injured, when he could have passed along the side of it with safety."

In Weston v. City of Troy, 139 N. Y. 281–283, 34 N. E. 780, 781, it was said:

"The presumption which a wayfarer may indulge that the streets of a city are safe, and which excuses him from maintaining a vigilant outlook for dangers and defects, has no application where the danger is known and obvious."

Neddo v. Village of Ticonderoga, 77 Hun, 524, 28 N. Y. Supp. 887.

We conclude that, as matter of law, the plaintiff did not show himself free from contributory negligence; that the learned trial justice should have granted the defendant's motion for a nonsuit; and that the finding of the jury that the defendant was guilty of actionable negligence was contrary to and against the weight of the evidence. The errors above specified require the reversal of the judgment and order appealed from.

Judgment and order reversed, and new trial ordered, upon questions of law and of fact, with costs to the appellant to abide the event. All concur.