# Wytheville.

## CITY OF RICHMOND v. MASON.

### June 10, 1909.

1. MUNICIPAL CORPORATION—*Streets and Sidewalks—Reasonably Safe Condition.*—A municipal corporation is not an insurer against all defects and obstructions in its highways, but is bound to use due and proper care to see that its streets and sidewalks are reasonably safe for persons exercising ordinary care and prudence. It is not required to have its streets and sidewalks so constructed as to secure absolute immunity from danger in using them, nor is it bound to employ the utmost care and exertion to that end.

2. MUNICIPAL CORPORATION—*Defective Highways—New Territory—Time to Repair Streets—Negligence.*—A municipal corporation is only liable for injuries resulting from defects in its streets when it has negligently failed to do that which it could reasonably be required to do under the circumstances of the particular case. If new territory be annexed to a municipality, a reasonable time must be allowed within which to put the streets and sidewalks of the new territory in a reasonably safe condition for travel, considering the subject in its entirety, and having reference to surveying, platting, grading, lighting and other things necessary to be done, and until such time has elapsed the municipality is not chargeable with negligence in that respect. What constitutes reasonable time is a question to be determined by the jury upon the evidence and proper instructions as to the law bearing thereon.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*H. R. Pollard* and *George Wayne Anderson,* for the plaintiff in error.

*P. H. C. Cabell* and *Robert H. Talley,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Mrs. Mason instituted her suit in the Law and Equity Court of the city of Richmond to recover damages for an injury sustained by her by stepping into a trench or hole in the roadbed at the point of intersection of "N" and 32nd streets, on the 14th of May, 1907. She recovered a judgment for $1,500, and the case is before us upon a writ of error.

In the course of the trial, the city offered witnesses to prove that "it had used reasonable care to place the streets in the annexed territory (the point at which the accident happened having been in the annexed territory) in a reasonably safe condition; that previous to the recent annexation of territory shown in plaintiff's evidence, the city had under its care 116 miles of streets, and that by the annexation about 90 miles of streets had been placed under the care of the city; that these 90 miles had been previously in the county of Henrico, and were in a wretched condition for travel; that it was practically impossible, between the time of annexation, which occurred on December 6, 1906, and the time of the accident, May 14, 1907, to have so repaired and lighted the streets in said territory as to put them in the same condition of safety as the streets in the old territory of the city; that in view of the charge made in one count of the plaintiff's declaration, namely, that the city was negligent in the matter of lighting the street at the point where the accident happened, it was proposed to show that it was practically impossible, within the time during which the city had charge of the annexed territory, to erect and install a system of lighting, either gas or electricity, which would have adequately lighted

the streets in the annexed territory; that in the old territory there were in use, approximately, 900 gas lamps and 695 electric lights; that to equally well light the annexed territory it would be necessary to install therein 574 gas lamps, and lay 74 miles of gas mains, at an aggregate cost of $105,000, and that 443 electric lights would be necessary, at a cost of $40,000. It was further proposed to introduce an ordinance approved January 21, 1907, in order to show that the city had promptly assumed its responsibility in the annexed territory, and had exercised its option in the matter of making a bond issue of a sum equal to 12 *per centum* of the assessed value of the real estate within the annexed territory, for the purpose of making public improvements therein." It was also proposed to introduce the city engineer, "by whom it would be shown that his department, having charge of the repair and improvement of the streets, had acted promptly and energetically in the matter of repairing and improving the streets in the annexed territory; that before the introduction of gas mains along the streets of the city it was necessary by a proper survey of the territory to prepare profiles of grades of the streets therein; that such surveys and maps were essential to ascertain the water sheds, and after the making of the surveys and maps it would necessarily require time for proper deliberation and study to fix the extent of the water shed in each particular locality; that until such surveys, maps and profiles were made, grades could not be established, and until grades were established gas mains could not be laid in the streets; that it was a physical impossibility for the city, between the time of the annexation and the happening of the accident to have placed the streets in the annexed territory in as safe a condition for the use of the public as the streets were within the old territory of the city. But the plaintiff still objected to the evidence of the witness, and also objected to the introduction of the proposed evidence on the ground that the same was irrelevant and improper; and the court sustained the plaintiff's objection to the evidence and

refused to allow the same to be introduced, to which action of the court in refusing to allow the same to be introduced the defendant excepted, and filed its bill of exceptions. And this constitutes the first assignment of error.

It is settled law that a municipal corporation is bound to exercise due and proper care to see that its streets and sidewalks are reasonably safe for persons exercising ordinary care and prudence; but the law does not require a municipal corporation to respond in damages for every injury that may be received on a public street. The corporation is not required to have its streets or sidewalks so constructed as to secure absolute immunity from danger in using them; nor is it bound to employ the utmost care and exertion to that end. 2 Dillon on Mun. Corp. sec. 1006.

In 28 Cyc. at p. 1358, the law is thus stated: "Where a municipality is chargeable with notice or knowledge of defects or obstructions, the general municipal duty to exercise ordinary care to keep its streets in a reasonably safe condition is continuing and constant. Its liability is for negligence, however, and for negligence only. It is not liable for damages for every accident that may occur within its limits. It is not an insurer against all defects or obstructions in its streets and is not required or expected to do everything that human energy or ingenuity can do to prevent injury to the citizen; but its duty is to exercise reasonable care, and only this degree of care, to make and maintain its streets and walks reasonably safe for the purposes to which such respective parts are devoted, and for the use of persons traveling thereon in the usual modes by day or by night, and who are themselves in the exercise of reasonable care, whether the defect or condition causing the injury was created by the municipality itself or was created by some third person, or by natural causes, and should in the exercise of ordinary care have been discovered and repaired. After it has notice, either express or implied, of the existence of defects or obstructions, no matter how they were caused,

the obligation immediately arises to exercise reasonable care to restore the street, that it may again be reasonably safe for ordinary travel. In determining whether the corporation is exercising reasonable care in the performance of its duty to make and maintain its streets reasonably safe, each case must depend upon its own surrounding circumstances; the care must be reasonable and commensurate with the danger."

Had this accident occurred on the 5th of December, 1906, defendant in error would have been without any remedy whatsoever, for the county of Henrico would not have been responsible to her in an action for damages by reason of an injury sustained on one of its defective highways. If the view of the trial court be correct, the city of Richmond became liable *eo instanti* that the annexation of this territory was consummated; so that on the 7th day of December, 1906, the city became responsible to all persons for defects in the sidewalks and streets in the annexed territory, and for any injury sustained by reason of the fact that this territory had not been properly lighted. Such a conclusion would, we think, be generally rejected as shocking to the sense of justice. But if it be not true, then it necessarily follows that the city only becomes negligent after a reasonable time has elapsed within which its duty to make its streets and sidewalks reasonably safe could have been performed; and if that be true, then it becomes a fact to be ascertained by the jury upon proper evidence and proper instructions as to the law bearing upon the evidence.

We have found no case which treats of what constitutes a reasonable time within which a city shall render streets, sidewalks and highways in an annexed territory reasonably safe for travel; but there are cases which seem to illustrate the underlying principle common to them and to the case under consideration.

Where there has been a heavy fall of snow which obstructs all the streets of a city; where it has been in part removed and a thaw sets in followed by a freeze; and in numerous other

cases, the courts have held that a municipality cannot be charged with negligence because its sidewalks had by such causes been rendered dangerous.

In *Taylor* v. *Yonkers,* 105 N. Y. at p. 202, 11 N. E. 642, 59 Am. Rep. 492, it is said: "A municipal corporation is bound to keep its sidewalks safe and convenient for the passage of the public, so far as reasonable diligence and the possession of adequate resources will allow; and the application of this rule to conditions resulting from the rigors and changes of a northern winter, and to two emergencies which frequently occur, was very fairly and justly discussed and limited. It often happens that in a single day or night, every street and sidewalk in a city or village is covered with a heavy fall of snow. It is not expected and cannot be required that the corporation shall itself forthwith employ laborers to clean all the walks, and so accomplish the object by a slow and expensive process, when the result may be effected more swiftly and easily by imposing that duty upon the citizens. Each can promptly and without unreasonable burden clean the snow from his own premises, and the authorities may justly and lawfully require that to be done under the jurisdiction conferred by their charters. But though the municipality makes the necessary regulation it is not thereby relieved from responsibility. The duty remains, and it must therefore see to it that its ordinance is obeyed. It is entitled, however, to a reasonable time within which to perform the duty in the manner permitted, and is not guilty of negligence, if, observing that the work is being generally done, it awaits for a reasonable period the action of the citizens. But when such reasonable time has been given, the corporation must compel the adjoining owners or occupants to act, or do the work itself, and if it suffers the obstruction to remain thereafter, with notice, actual or constructive, of its existence, it may become responsible for injuries resulting. * * * When the streets have been wholly or partially cleaned it often happens that a fall of rain or the melting of adjoining snow is suddenly

followed by severe cold, which covers everything with a film or layer of ice and makes the walks slippery and dangerous. This frozen surface it is practically impossible to remove until a thaw comes which remedies the evil. The municipality is not negligent for awaiting that result." *Rogers* v. *City of Rome,* 96 N. Y. App. Div. 427, 89 N. Y. Supp. 130; *Moran* v. *City of New York,* 98 N. Y. App. Div. 301, 90 N. Y. Supp. 596.

There is no analogy between the facts of the cases cited and that under consideration, but they decide that the municipality is only liable for negligence, and that what constitutes negligence is a mixed question of fact and law, varying with the circumstances of each particular case; and that the municipality can only be held liable for negligence where it has failed to do that which it could reasonably be required to do, regard being had to all the circumstances by which it was surrounded.

Counsel for defendant in error say that the defect in the highway which caused the injury to her was of so trifling a character that it could have been repaired by placing a few bushels of earth in the hole or ditch into which she fell.

This is true of almost all accidents due to defects in streets and highways. Each defect in itself is trifling and its removal or repair would involve small expense; but the application of this reasoning to each particular case would render the municipality liable in all. The officials of the city charged with the duty of repairing and lighting its streets and highways must consider the duty before them in its entirety, as requiring the fixing of grades and laying of pipes and mains and the construction of sewers in accordance with a general plan or system; and could not single out this or that defect as the subject of their special care.

We are of opinion that the evidence excluded should have been admitted, to the end that the jury, under proper instructions, might have considered and decided whether or not the city of Richmond was, under all the circumstances, guilty of

negligence in failing to render safe the roadway at the point where the injury was received.

The second assignment of error is to the refusal of the court to give an instruction which raises the same question as that which we have disposed of in dealing with the first bill of exceptions.

The case must, for the reasons already given, be reversed and remanded for a new trial. We do not deem it necessary to pass upon the third and fourth assignments of error, as upon a new trial the facts proved may differ materially from those presented in the present record.

*Reversed.*