Wytheville.

CITY OF PORTSMOUTH V. LEE.

June 8, 1911.

1. MUNICIPAL CORPORATIONS—*Safety of Streets.*—A municipal corporation is not an insurer against accidents on its streets and sidewalks; nor is every defect therein, though it may cause the injury sued for, actionable. It is bound only to use due and proper care to see that its streets and sidewalks are reasonably safe to persons passing on or along them when exercising ordinary care and prudence to that end. It is only liable for injuries resulting from defects in its streets and sidewalks where it has negligently failed to do that which it could reasonably be required to do under the circumstances of the particular case.

2. MUNICIPAL CORPORATIONS—*Health and Welfare of Citizens.*—It is as much the duty of a municipal corporation to take due care and proper precautions for the health and welfare of its citizens as it is to keep its streets and all parts of them in a reasonably safe condition for public travel, and the principles of law fixing the liability or non-liability of the city in damages, where an injury on the streets is sued for, and where the suit is for neglect of duty in the protection of health and general welfare are the same, and apply alike in both cases.

3. MUNICIPAL CORPORATIONS—*Streets—Necessary Obstruction—Negligence of Pedestrian.*—No action lies against a city for a personal injury resulting from stumbling over a hose pipe, three and a half inches in diameter, left lying in a public street at night, two or three feet from the curbing and unguarded by a red light, where it appears that the pipe was lying directly under an arc electric light, and was being used at the time for the purpose of flushing a city sewer which had become stopped, and that that was not only the usual way but the only way in which it could be done properly, and that the noise made by the water running through the pipe could be heard for a distance of sixty feet by a person of ordinary hearing. Such action on the part of the city does not constitute actionable negligence.

4. MUNICIPAL CORPORATIONS—*Defect in Streets—Notice—Reasonable Time.*—In the absence of all evidence of actual notice, the jury has no arbitrary right to say that where a hose pipe was left in a position of safety and three hours and a quarter afterwards was found in a position of danger, the city had a reasonable time within which to learn of and remove the danger.

5. MUNICIPAL CORPORATIONS—*Defective Streets—Contributory Negligence of Plaintiff—Case at Bar.*—In the case at bar, even if the hose pipe in the street, over which the plaintiff stumbled, causing the injury complained of, was an unlawful and unreasonable obstruction of the street, the evidence shows such contributory negligence on the part of the plaintiffs as bars recovery.

Error to a judgment of the Circuit Court of the city of Portsmouth in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*John W. Happer* and *Frank L. Crocker,* for the plaintiff in error.

*S. Burnell Bragg, Jeffries, Wolcott, Wolcott & Lankford,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Mrs. Margaret Lee, a married woman, brought this action against the city of Portsmouth, and recovered a verdict and judgment for $3,000 as damages for personal injuries alleged to have been caused by reason of the plaintiff's stumbling over a hose pipe lying in the street against or close to the curbing, at the intersection of High and Green streets in said city.

The gravamen of the declaration in the case is the alleged

negligence of the defendant city in placing or permitting to be placed the said hose pipe in the street. It appears that High street runs east and west and is paved with asphalt; Green street runs north and south and is sixty feet wide. The accident to the plaintiff is alleged to have occurred at the southeast intersection of High and Green streets. On the day of the accident, which was the 6th day of November, 1908, the street inspector and some of the street hands had been engaged in flushing out one of the sewers of the city, which had become stopped, and in order to flush out this sewer it became necessary to attach one end of a piece of hose pipe about three and one-half inches in diameter and about twenty-three or twenty-four feet in length to the water hydrant located at the edge of the sidewalk on Green street, a little south of the south building line of High street, and place the other end in a catch-basin situated at the southeast intersection of the sidewalks of Green and High streets, allowing the water at full pressure to run through the hose pipe into the catch-basin thence through the sewer. This sewer was so badly clogged that it became necessary, in order to clear it out, to let the water run through it not only during the day but also all of the night, and the accident here complained of occurred about fifteen or twenty minutes to eight o'clock in the evening. There was an electric light pole at the southeast intersection of the sidewalks of High and Green streets, with an arm or bracket extending from the pole about six feet in a northwesterly direction, and attached thereto was an arc street electric light, which light burned all of that night.

The plaintiff lived on the west side of Green street, about two and one-half blocks from the scene of the accident, and on the evening of the accident she left her home about twenty minutes to eight o'clock to go to a theatrical performance about five blocks away, and which was to begin

at a quarter to eight o'clock.    She was accompanied by her
brother and a little girl.    It was a cold and windy night,
and she was holding her coat around her neck and was
walking fast in order to get to the theatre in time.    She
was somewhat ahead of her brother and the little girl.    Her
course was down the west side of Green street to High
street, and thence to the east sidewalk of Green street at
its intersection with the south sidewalk of High street.
There, as is alleged, she came in contact with the hose
pipe, and stumbling struck her knee against the curbing
of the sidewalk, and thereby received the injuries of which
she complains.

With respect to the foregoing facts there is no conflict
of evidence, and the only material facts about which there
is any conflict of testimony are, first, whether the hose pipe
was lying up against the curbing of the sidewalk, as testi-
fied to by the defendant's witnesses, or lying two or three
feet away from it, as testified to by some of the plaintiff's
witnesses; and, second, whether the city's servants put a
red lantern on the curbstone on Green street, as testified
to by several of the defendant's witnesses, or there was
no lantern there, according to the testimony of several of
plaintiff's witnesses.

The questions for our determination are, (1) was the
defect in the street complained of actionable negligence on
the part of the city; and (2), if the evidence be sufficient
to sustain the charge of negligence, as found by the jury,
was defendant in error, plaintiff below, free from con-
tributory negligence concurring with the negligence of the
city and causing her injury?

It has been repeatedly held by this court and is the well
recognized rule of law in the courts of many of the States,
as well as in the Federal courts, that a municipal corpora-
tion is not an insurer against accidents upon its streets and
sidewalks; nor is every defect therein, though it may cause

the injury sued for, actionable. It is bound only to use due and proper care to see that its streets and sidewalks are reasonably safe to persons passing on or along them, when exercising ordinary care and prudence to that end. It is only liable for injuries resulting from defects in its streets or sidewalks where it has negligently failed to do that which it could be reasonably required to do under the circumstances of the particular case. *City of Richmond* v. *Courtney,* 32 Gratt. 798; *Same v. Mason,* 109 Va. 546, 65 S. E. 8; *Same* v. *Lambert,* 111 Va. 174, 68 S. E. 276, 28 L. R. A. (N. S.) 380; *Same* v. *Schonberger,* 111 Va. 168, 68 S. E. 284, 29 L. R. A. (N. S.) 180; *City of Portsmouth* v. *Houseman,* 109 Va. 554, 65 S. E. 11.

Conceding for the sake of the argument that there is a conflict in the evidence, and, therefore, it has to be taken as true that the hose pipe in question here was lying in the street two or three feet from the curbstone, and that there was no lighted lantern there to disclose its presence, was this hose pipe an unlawful or an unreasonable obstruction in the street? It was unquestionably being used by the city in the performance of a public duty in cleansing one of its sewers which had become clogged, and thus protecting the health and welfare of its citizens. This sewer was being cleansed in not only the usual way, but in the only way in which it could be properly done, and unquestionably the city had the right to put the pipe there for the purpose of cleaning the sewer in the manner in which it was being done, and for that purpose to allow it to remain there as long as the necessity existed, using only such precaution against injury to persons using the street as ordinary prudence would dictate under the circumstances. When this hose pipe, three and one-half inches in diameter, was from necessity left in the street for the night, not only was it under an arc electric light which burned all night, but the hose was filled with running water,

and the noise of the water as it poured into the catch-basin was such that no one not deaf could fail to hear it. Unless it could reasonably have been expected by the city's officials in charge of the work that one in the' possession of his faculties would fail to see a hose pipe three and one-half inches in diameter filled with water and directly under an electric arc light, clearly the failure of the city to take other precautions under the circumstances would not render it guilty of actionable negligence. Certainly ordinary prudence would not have dictated that a policeman should be put there to warn travelers of the presence of the hose pipe.

It is to be borne in mind that it is as much the duty of a municipal corporation to take due and proper precautions for the health and welfare of its citizens as it is to keep its streets and all parts of them in reasonably safe condition for public travel, and the principles of law fixing the liability or non-liability of the city in damages, where an injury on the street is sued for, and where the suit is for neglect of duty in the protection of health and general welfare, are the same and apply alike in both cases.

In the case of *Elam* v. *Mt. Sterling*, 132 Ky. 657, 117 S. W. 250, 20 L. R. A. (N. S.) 512, the opinion says: "Without passing upon the correctness of the rulings of the trial court in respect to the evidence offered and rejected, we will proceed to consider the qustion whether or not placing the stones in the street and permitting them to remain there for the time mentioned was an actionable nuisance. It is elementary doctrine that cities and towns must keep their streets, and all parts of them, in reasonably safe condition for public travel; but streets can only be kept in reasonably safe condition for public travel by improving and repairing them. And, if it becomes necessary to improve and repair streets, the municipal authorities must of necessity have the right to put in the streets the material needed to improve

and repair them, as well as the implements and machinery that it is requisite or proper to use in this kind of work. It would be most unreasonable to impose upon a city the duty to improve and repair, and at the same time hold it liable for accidents happening on account of horses becoming frightened at the material or implements or machinery used. In cases of this character the doctrine of non-liability should be applied, unless there is negligence independent of merely placing material needed in a proper place on the street. The city should, of course, exercise care in placing the material; and, if it is of unusual character, the additional duty might be imposed of exercising reasonable care to prevent injuries growing out of the fright of horses using the street. . . .

"There is quite a difference between the liability of a city for placing or permitting to remain in its streets material or objects not necessary for the use of the city in the construction or improvement of its streets and its liability for occupying its streets with material that is needed for construction or repair. In the first mentioned state of the case the city would not be keeping its streets reasonably safe for public travel if by its negligence it permitted them to become encumbered with articles or objects calculated to frighten horses of ordinary gentleness; whereas, in the other instances, no liability would attach if proper care was taken in the location of the usual material."

An extended note to that case, in 20 L. R. A. (N. S.) 572 after a review of very many of the decided cases with respect to the liability of municipal corporations for defects or obstructions in streets, gives the writer's conclusions from them as follows: "Nor is the temporary obstruction of a street for the purposes of improvement thereof unlawful, when a reasonable necessity exists therefor; and municipal corporations are not answerable in damages for permitting it. But the duty of a municipal corporation to improve

and repair its streets and keep them free from obstruction is coupled with a duty to protect the traveling public while the obstruction exists, so far as is compatible with the temporary interference of those intrusted with their care. And obstructions of this class can be made only when a matter of necessity, and can be continued only for a reasonable time commensurate with the reasonable prosecution of the work; and the municipal corporation is bound so to guard and light the obstruction as to render the street reasonably safe for use, or to entirely close the street against the public if necessary to prevent accidents."

The case of *District of Columbia* v. *Moulton*, 182 U. S. 576, 45 L. ed. 1237, 21 Sup. Ct. 840, is instructive as to when an obstruction left in a street is lawful or reasonable and when unlawful or unreasonable. In that case a steam roller which had been used in repairing the street was left close to the south curb of Park street, from twenty to thirty feet west of Pine street, and over the roller was placed a canvas cover. The plaintiff was injured as the result of his horse taking fright at the roller, and brought his suit to recover damages therefor. The trial court ruled that the facts did not present a case of negligence and directed a verdict for the defendant. In the opinion of the Supreme Court by Mr. Justice White (now chief justice) affirming the judgment of the trial court, it is said: "The steam roller in question had been brought to the place where the accident occurred for a lawful purpose, viz., that of performing a duty enjoined upon the district to keep in repair the streets subject to its control. The use of an appliance such as a steam roller was a necessary means to a lawful end—a means essential to the performance of a duty imposed by law. It must therefore follow that if in the legitimate and proper use of such machine, with reasonable notice to the public of such use, an injury is occasioned to one of the public,

such injury is *damnum absque injuria.* *Lane* v. *Lewiston,* 91 Me. 292, 294, 39 Atl. 999; *Morton* v. *Frankfort,* 55 Me. 46; *Cairncross* v. *Pewaukee,* 78 Wis. 66, 47 N. W. 13, 10 L. R. A. 473, commenting upon and explaining *Hughes* v. *Fond du Lac,* 73 Wis. 380, 41 N. W. 407. Conceding that the roller was an object calculated to frighten horses of ordinary gentleness, yet at the most, the liability of the municipality for negligently permitting such objects to remain within the limits of a highway, if it exists, must primarily be dependent upon the fact that they are unlawfully upon the highway.

"We shall assume that the period when the steam roller became serviceable while in use on Park street was the forenoon of the day prior to the accident, as claimed by the plaintiff. The right, however, to use a steam roller upon a public street for the purpose of the repair of such street we think necessarily includes the right to retain the roller upon the street until a reasonable time after the necessity for the use of the machine has terminated, in the meantime exercising due care in the deposit of the machine when not in use, and giving due notice and warning to the public of the presence of such machine if travel on the street is permitted. We can perceive no difference in principle between using and keeping a steam roller on the streets until the completion of a particular work, and the maintaining of a lawful excavation, such as for the construction of a sewer, or of an underground road, and the use of an engine, derrick, etc., in connection with the hoisting of earth from an excavation. The appliances used in connection with such excavations, even though calculated to frighten horses of ordinary gentleness not familiar with such objects, undoubtedly may be retained at the place where needed until the necessity therefor has ceased."

In the case here there is no conflict in the testimony given by plaintiff in error's witnesses, to the effect that the hose

pipe in question was left lying close to the curbstone—*i. e.*, "hugging the curbstone of the sidewalk along Green street from near its connection with the water plug to the catch-basin," and that the city's servants placed at nightfall a lighted lantern on the curbstone on Green street—with that of defendant in error and her witnesses, to the effect that the hose pipe, at the time of the accident to her, was two or three feet out from the curb, and that they saw no lantern on the curbstone.

J. W. Wood, the street inspector, with an experience of twenty-odd years in that position, and C. E. Porter, the policeman on the beat where and when the accident occurred, both testify that the hose pipe was placed and left right up against the curb of the sidewalk, instead of two or three feet away; while defendant in error and her witnesses only saw the pipe after the accident, and in effect say nothing more with respect to the lighted lantern in question than that they did not see it; therefore, their testimony is simply negative in its nature.

Barrow, one of the city's street hands, testified positively that he had put the lighted lantern on the curbstone just south of the crossing at sundown on the night of the accident; that he went back there twice during the night; that it was still burning; that he took it away the following morning, and that it had not then gone out. Wood, the street inspector, states also that he saw the lighted lantern soon after supper, and that he usually ate supper at that season of the year about 5:30 o'clock.

With the evidence of Wood, Porter and Barrow before the jury and not in conflict with any evidence offered by defendant in error as to where the hose pipe was left at sunset on the evening of this accident, and what light or lights had been provided to disclose its presence, the jury, in order to find plaintiff in error guilty of actionable negligence, necessarily had to regard those city officials or ser-

vants as perjurers or totally disregard their evidence, for if the hose pipe was where these officials say it was left at sunset, 5:07 o'clock, and where no one could stumble over it, and the light to disclose its presence was what they say it was, plaintiff in error could not be held liable for negligence by reason of the location of the hose pipe, unless there was evidence sufficient to justify the conclusion that the city's officials, or some of them, knew or ought to have known that the hose pipe had become displaced from where it was left at sunset, and should have replaced it before this accident happened, about twenty minutes to eight o'clock. Instead of evidence even tending to sustain such a conclusion, there is none whatever, and in the absence of all evidence of actual notice, it was not an arbitrary right of the jury to say that between sunset on November 6, 1908, and twenty minutes to eight o'clock of that evening was a reasonable time within which the city should have known of the defect in its streets complained of in this action. *Portsmouth* v. *Houseman, supra.*

Even though it had to be taken as true that the hose pipe was lying in the street two or three feet from the curb of the sidewalk, and that there was no lighted lantern on the curbing at the time of the accident, it is not a necessary conclusion to be drawn from the evidence that the plaintiff in error not only left this obstruction in the street, but negligently failed to do, as a precaution against injury to travelers along the street, that which it could be reasonably required to do under the circumstances.

Practically the only excuse defendant in error gives for not seeing the hose pipe is, that it was the same color as the asphalt pavement; that the pipe did not have water flowing through it; and that it was lying flat on the street; and this is claimed by her, although all of her other witnesses, as well as those for the defense, testified that the water was flowing through the pipe; and according to the proof, with which there is no conflict, the noise of the

water passing through the pipe into the catch-basin could be heard by anyone not deaf at least sixty feet away; and further, that the burning electric light directly over the pipe was sufficient to enable a traveler on the street to see it when a hundred or more feet away. Just what the defendant in error meant by her statement, that "the electric light was real low that night, in the shadow," is not clear, since there is no evidence in the case as to the light being obstructed by a shadow, and she only says that she noticed the shadow after she sat down on the steps, and all that she testified to as to the situation then is based upon what she noticed after her accident and after she sat down. It was a cold, windy night, and she admits that she was hurrying to the theatre to be there on time, and holding her coat around her neck and looking straight to the front—*i. e.*, down the street beyond where she was walking; so that, even if it be true that there was no lighted lantern on the curbing of the sidewalk along Green street, and there was a shadow on the walkway along High street, reasonably fair-minded men would never draw the conclusion that the injury of which defendant in error complains was caused by either of those conditions. Indeed, the only conclusion that can be reasonably drawn from her own evidence and the undisputed facts testified to on behalf of the defense is that defendant in error, by hurrying along the street, taking no precaution for her own safety, so directly contributed to the accident which caused her injuries that a recovery therefor is precluded, even though, as a matter of law, it could be held that the presence of the hose pipe in the street was an unlawful and an unreasonable obstruction therein.

In either view of the case, we are of opinion that the circuit court erred in not setting aside the verdict of the jury and granting plaintiff in error a new trial; and this court will enter here the judgment the circuit court ought to have entered.                    *Reversed.*