3423.  MAYOR AND COUNCIL OF MACON v. MORRIS.

1. The evidence, though apparently preponderating against the verdict, is nevertheless not legally inadequate to make the finding of the jury conclusive on this court as to the facts of the case.

2. Where territory is lawfully annexed to a city, the new area becomes "a part of the city for all municipal purposes," and the public highways therein become streets of the city, and the city becomes chargeable with the duty of using reasonable diligence in seeing that they are placed and kept in such condition as will make passage thereon reasonably safe. As to defects existing in the highway at the time of the annexation, the city does not become chargeable with liability until it has discovered them, or, in the exercise of ordinary and reasonable diligence, should have discovered them, and until it has then had a reasonable opportunity to remedy them.

(a) What is a reasonable time or opportunity in these respects is ordinarily a question for the jury, to be determined upon a consideration of all the illustrative facts as they may appear.

3. Policemen, unless what may be called their common-law duties have been enlarged, are mere peace officers not chargeable with the duty of observing or inspecting condition of the city highways; and, in such cases, are not channels for the communication of implied notice to the city of defects in a street; but the city may enlarge their powers by ordinances, rules, or instructions affecting their employment and putting on them the duty of inspecting for and of reporting as to defects; and, in that event, notice and negligence may be implied through them.

(a) A like rule applies as to employees of the sanitary department. Primarily they would be concerned only with matters relating to the public health; but the city may put on them the duty of observing and reporting the condition of other things (e. g. the condition of drains and sewers in the highways) ; and, in that event, notice and negligence may be implied through them.

DECIDED JANUARY 15, 1912.

Action for damages; from city court of Macon—Judge Hodges. April 22, 1911.

On March 4, 1910, certain contiguous suburbs of considerable area were annexed to the City of Macon, as a result of an election held under a special act of the General Assembly. In this new territory were a number of highways which had been previously kept up by the county authorities; and one of these was known as Giles street. Early in the night of March 11, 1910, Mrs. Morris, the plaintiff, started to the home of her sister, who lived on Giles street. She had never previously been on the street. She left the street-car at a near-by point, and, while going down Giles street on what was not, strictly speaking, a sidewalk, but was a part of the street (on its edge nearest the property line), which

was commonly used by pedestrians, she fell into an unguarded sewer-opening and was injured. The contour of the street surface was such as to hide the opening from any one approaching from the direction from which she came, especially at night, but could easily be seen by any one approaching from the opposite direction. The danger of the situation was inherent in the method of its original construction by the county authorities. She sued the city for damages because of her injury, and recovered a verdict for $1,000. No negligence on the plaintiff's part is asserted; it is also practically conceded that the sewer was originally constructed and maintained by the county authorities in a negligent way; the defense of the city is that it did not know of this defect in the highway and that it had not had control over this new territory long enough for negligence to be imputed to it for not discovering and relieving the dangerous situation. The case comes to this court on exceptions of the city, the overruling of a demurrer to the petition, and to the refusal of a new trial.

*Lane & Park,* for plaintiff in error.

*J. F. Urquhart, John P. Ross, Akerman & Akerman,* contra.

POWELL, J. (After stating the foregoing facts.)

1. If we had the power of a trial judge as to granting a new trial on the facts of a case, we would grant one in this case. If we had been on the jury we would not have found the city liable. There are in the record complete photographs of the scene of the injury, and when we look at them and see how little there was to attract any immediate attention to the danger incident to the method in which this sewer had been located and constructed; when we consider what short time the city had for looking over its vast newly-acquired area and for discovering and remedying such previously existing conditions as were likely to cause hurt therein; when we ask ourselves if any body of prudent men, situated as the municipal body of Macon was situated, would likely have discovered and remedied this particular defect in the mere week's time that had elapsed between the date of the annexation of the territory and the date of the injury, it seems to us that the jury's finding of negligence rests on a very meager basis. But it is nothing new for us to say that the jurisdiction of the jury to settle the facts is as final as is this court's jurisdiction to determine the law; and their finding of fact is entitled to the same respect from us as our decision

on the law is entitled to receive from them. And no doubt, if a reciprocity of criticism were allowable, some of our decisions as to the law would seem as absurd to the jurors as their finding of facts seems to us in this case. There is a point at which facts cease to be issuable and the jurisdiction of the jury is withdrawn for the lack of anything for them to decide; when all the evidence and all the inferences to be drawn therefrom so irresistibly point to only one way as to leave no "scope for legitimate reasoning by the jury," and the only conclusion deducible from the facts is a matter of law, which the court may declare; but we can not say that that point has been reached in this case. Hence, we must abide by the finding of the jury, as much as it may shock us.

2.   When the borders of the City of Macon were so enlarged as to take in new territory, that territory became at once "a part of the city for all municipal purposes;" and such public highways as had been previously maintained therein became city streets; and the city became chargeable with the duty of using reasonable care and diligence to place them in reasonably safe condition for public passage. *City of Columbus* v. *Ogletree,* 102 *Ga.* 293 (29 S. E. 749). As to dangerous and defective conditions existing in the highways at the time of the annexation, the city did not become chargeable with liability until after it had discovered them, or until after such a length of time had elapsed that in the exercise of ordinary diligence it should have discovered them, and after it had then had reasonable opportunity to take the necessary steps to remedy them. The case of City of Richmond *v.* Mason, 109 Va. 546 (65 S. E. 8), is relied on by the plaintiff in error. The decision in that case is very strongly written, and runs along the line that a city does not become immediately liable for the defective condition of highways in annexed territory; that it must have a reasonable time in which to discover and then to remedy such conditions; that even five months may not be an unreasonable length of time for that purpose; that what is a reasonable time is a mixed question of law and of fact. It is to be seen that the ruling there is perfectly consistent with what we are now deciding. In that case the verdict in the plaintiff's favor was set aside, because the trial court refused to allow the city to show the recency of the annexation and the extent and condition of the new area, and to show what it had done to remedy conditions therein. In the present case proof of all these things

was allowed by the trial court and was passed on by the jury under full, fair, and appropriate instructions.

3. The other serious question in the case is as to how far the city was responsible for the failure of its sanitary inspectors and its policemen to acquire knowledge of the dangerous condition of this sewer, which was not a part of the city's system of sanitary sewerage, but was used for surface drainage. As to the sanitary inspectors, the city code put on them the duty of daily general sanitary inspection of "the condition of streets, sidewalks, pavements, and street gutters, and the relative level of lots and streets, and the system of drainage and sewers, in every lot, street and alley." Also, in a book denominated on its title page as the "Rules and Regulations adopted by the Mayor and Council of the City of Macon for the Government of the Department of Police of said City," and which, according to the testimony, was the official book of rules kept in the headquarters of the police department and furnished to the policemen by the mayor and council for their guidance, were two rules requiring policemen to observe the condition of streets, sidewalks, and alleys, and to report anything likely to produce danger. In *City of Columbus* v. *Ogletree, 96 Ga.* 177 (22 S. E. 709), it is decided that unless the city has enlarged what may be called the common-law powers of its policemen, they are mere peace officers, charged with no duty respecting the condition of streets and sidewalks, and that therefore they are no such agents of the city as to be channels for the communication of implied notice of defects in the streets. In the same case, as reported in 102 *Ga.* 293 (29 S. E. 749), it is held, that "An ordinance making it the duty of policemen to report to the lieutenants of police all footways, bridges, and sidewalks requiring repairs, necessarily renders it incumbent on the lieutenants to report upon the same to the authorities whose duty it is to have the needed repairs made; and therefore, under such an ordinance, notice to a policeman or a lieutenant of a defective or dangerous place in a sidewalk is notice to the city." It seems that a like rule should apply as to sanitary inspectors. Primarily the sanitary department is concerned only with matters affecting the public health, but its officers may be charged by action of the city council with the further duty of observing and reporting other matters.

Now, the city can not discharge the duty it owes the public

of being reasonably diligent to discover defects in its streets without having some agents or agent to perform the service of observation and inspection. It is a very appropriate service to place upon the police department. Likewise, so far as the safety of the streets for public passage is affected by the location and condition of drains, sewers, and culverts, it is an appropriate service to require of the employees in the department having drains and sewers in charge. We do not think that the court erred in allowing these ordinances and rules to be read in evidence, or in submitting to the jury the question as to whether notice to the city, and negligence, were to be implied through these employees. A distinction is asserted between ordinances placing the duty of inspection on policemen, and mere rules or instructions issued to the police department to the same effect. We see no reason for making a difference. The important thing is that this was one of the methods resorted to by the city of performing its duty of acquiring knowledge of the condition of its streets. It is plain, from the evidence, that policemen in Macon were employed with respect to these rules, and that the governing body of the city was accustomed to act upon the reports made under them. No one can read the testimony on this subject in the record and doubt that the policemen of Macon are more than mere peace officers.

There are some assignments of error in the record which we have not taken up for discussion; but they are either controlled by the points that have been discussed, or are of too small importance to justify the grant of a new trial, even if they are well taken.                         *Judgment affirmed.*