# Richmond.

## T. C. MAURER V. CITY OF NORFOLK, ET ALS.

### May 27, 1926.

1. STREETS AND HIGHWAYS—*Liability of Municipality and Street Contractors—Personal Injury—Temporary Street Crossing—Case at Bar.*—In the instant case, an action against a municipal corporation and street contractors, plaintiff claimed that he had suffered personal injuries in crossing one of the streets under repair by the contractors, by reason of the negligence of the defendants. The accident occurred at night, the street was muddy and plaintiff was attempting to cross on some boards apparently forming a walkway across the rain water when a plank turned, causing him to fall and sprain his ankle. It did not appear who had placed the boards in the street.

   *Held:* That the testimony was insufficient to establish negligence on the part of the defendants.

2. STREETS AND HIGHWAYS—*Sidewalks—Presumption that Sidewalk is Reasonably Safe.*—A pedestrian may assume that a sidewalk is in a reasonably safe condition for the use of pedestrians.

3. STREETS AND HIGHWAYS—*Sidewalks—Duty to Keep in Safe Condition.*—A municipality is under a legal duty to exercise reasonable care to keep its sidewalks in a reasonably safe condition for pedestrians using them with ordinary care.

4. STREETS AND HIGHWAYS—*Duty to Keep in Reasonably Safe Condition—Street Crossings.*—It is the duty of a municipal corporation to exercise reasonable care to keep its roadways in a reasonably safe condition for the purpose for which they are intended to be used, including such ordinary uses as a pedestrian may make of a roadway crossing.

5. STREETS AND HIGHWAYS—*Sidewalks—Liability of City for Accidents—Reasonable Care.*—The city is not an insurer against accidents upon its streets, but its duty is uniformly expressed in the formula that it must exercise reasonable care to keep its sidewalks in a reasonably safe condition for the purpose for which they are intended.

6. STREETS AND HIGHWAYS—*Street Crossings—Care to be Exercised by Pedestrians.*—Though a street crossing is in a sense a part of the sidewalk, one passing over it may more easily expect obstructions

and therefore should exercise a greater degree of care than on the sidewalk proper so called. This rule, of course, should apply more stringently where repairs are seen to be in progress in the roadway of the street or where it is apparently unusually obstructed.

7. STREETS AND HIGHWAYS—*Street Crossings—Repairs—Action for Injury.*— In the instant case plaintiff was injured when attempting to cross a street, which was being repaired, upon some planks. Defendants denied that they placed the planks at the crossing or knew that they were there on the night of the accident, and plaintiff introduced no testimony to show who placed the planks at the crossing. Plaintiff contended that notwithstanding the planks had been placed at the crossing by some independent third person, yet the original conduct of the defendants in leaving the street in the condition in which it was constituted the proximate cause of his injury.

*Held:* That unless the condition in which the street was left was an act of negligence on the part of defendants, plaintiff could not recover.

8. APPEAL AND ERROR—*Plaintiff in Error must Show Error.*—It is incumbent upon the plaintiff in error to show error on the part of the trial judge in setting aside a verdict in his favor and entering judgment on the evidence against him.

9. APPEAL AND ERROR—*Weight of Verdict—Verdict Disapproved by the Trial Judge.*—A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him.

10. STREET CROSSINGS—*Street under Repair—Lowering of Grade of Street— Case at Bar.*—The instant case was an action by a pedestrian for injuries occasioned by a fall when crossing a street on some temporary boards. A slight lowering of the grade of the street was essential in the work of preparing it for asphalt paving.

*Held:* That when the street was so lowered by excavation or leveling off uneven surfaces and so made comparatively smooth, although a dirt street, there was nothing to induce a reasonable inference that it was in a dangerous condition for a pedestrian, even though he might desire to cross at a point where the street was lowered but the surface was fairly level.

Error to a judgment of the Court of Law and Chancery of the City of Norfolk, in an action of trespass on the case. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Elliott & Elliott* and *N. T. Green*, for the plaintiff in error.

*R. W. Peatross, John B. Jenkins, Jr.*, and *Hughes, Little & Seawell*, and *S. L. Sinnott*, for the defendants in error.

CRUMP, P., delivered the opinion of the court.

The plaintiff in error, T. C. Maurer, was the plaintiff in the lower court in an action for damages against the city of Norfolk and two contractors, J. U. Addenbrook's Sons, Inc. and F. J. McGuire, who were engaged in doing work upon the streets of Norfolk for the city. The plaintiff claimed that he had suffered personal injuries in crossing one of the streets under repair by the contractors, by reason of the negligence of the defendants in failing to use reasonable care to keep the street in a safe condition. Upon the trial the jury returned a verdict in favor of the plaintiff for $1,500.00 against the three defendants.

Upon a motion by the defendants to set aside the verdict, the trial court granted the motion, set aside the verdict, and under section 5261 of the Code rendered final judgment in favor of the defendants.

From this judgment the plaintiff obtained a writ of error.

The record contains only one certificate of exception, in which all the evidence is transcribed, and exception is taken to the ruling of the court in setting aside the verdict and entering judgment for the defendants. No

instructions are certified and we take it that no instructions were given to the jury.

The only question, therefore, before this court is whether the trial court correctly decided that the verdict was "contrary to the evidence, or without evidence to support it."

Hampton boulevard is a street in Norfolk running approximately north and south. In the centre of the street was a double track street car line somewhat elevated above the general surface of the street. On each side of this street car area the roadway from the tracks to the curbstone is about eighteen feet. On the western sidewalk there was a four foot walkway, though the evidence does not establish that it was in good condition at the time of the accident. Larchmont circle was the designation of a street crossing Hampton boulevard and running therefore east and west. In the spring of 1924, the city of Norfolk was engaged in repaving with asphalt and in recurbing the eastern side of Hampton boulevard, i. e., the portion of the roadway and sidewalk to the east of the railway tracks in the centre of the street. The roadway of the boulevard on the western side of the street had been already paved with smooth paving at the time of the accident in question here. The work upon the half of the boulevard on the eastern side had not been completed in May, 1924, when the plaintiff was injured. At that time this portion of the roadway, about eighteen feet in width, had been excavated about six inches below the curbing and the surface of the soil at this lower grade made comparatively level by the contractor who had that work to do, and was therefore in condition for receiving the base for the asphalt paving. This was the situation on the eastern side of the boulevard where Larchmont circle crosses it and for a half block or

more on each side of the last mentioned street north
and south on the boulevard.   At the time in question
the curbing had been put into place on the side of the
street being paved, and extended about six inches above
the level of the street roadway surface and about twelve
inches above the surface of the sidewalk which was also
being prepared for paving.   During the day of May
23rd, rain had fallen and water remained between the
curbing and the elevated portion of the street occupied
by the railway tracks.   This was the situation at the
crossing of Larchmont circle or so much of it as was in
the eastern half of the boulevard.   That evening the
plaintiff had taken a lady to the theatre and brought
her home afterwards and then had come out upon the
boulevard a block or more from Larchmont circle
crossing.   He walked along the smooth paving in the
roadway on the western side of the boulevard until he
got to the intersection of Larchmont circle.   Desiring
to cross to that point he walked over the railway tracks
in order to cross the eastern roadway to the sidewalk.
He saw some planks apparently forming a walkway
across the rain water over to the curbing.   These
planks he testified rested upon some wooden forms,
which we understand to be the forms or patterns which
had been used in constructing the cement curbing.   The
plaintiff walked the length of the first one or more
planks and had gotten within four or five feet of the
curbing or sidewalk when the plank turned in some way,
causing him to fall and sprain his ankle.   This occurred
about eleven-thirty at night.   There was at this point
a light on a pole between the railroad tracks of one
hundred candle power, which cast a light thirty or forty
feet but carried the full strength of the light only about
fifteen feet.   The strength of the light diminishing
with the distance.   It is testified by a witness for one

of the contractors that lighted red lanterns had been placed on the corners on the eastern side at this point. This, however, was denied by the plaintiff, who stated that he did not see them.

It was insisted by the defendants that they were entitled to judgment upon two grounds: First, that the testimony was insufficient to establish any actionable negligence on the part of the defendants or either of them; and second, that in any event the plaintiff was plainly guilty of contributory negligence.

The following is taken from the plaintiff's testimony on cross examination:

"A. The street is right dangerous place to walk, especially on a slippery night, and I was walking north on Hampton boulevard and thinking there was a sidewalk on the side of the street and that being in the direction I was going to catch a jitney, I crossed over there.

"Q. Crossed over to this side of the street?

"A. No; on the other side and took a cut right across the car tracks.

"Q. Come down here and show me how you came?

"A. Here is Magnolia avenue.   I walked up here and there being no sidewalk here, I walked along the street here where the automobiles go.   There was only one side you could use then up to Larchmont crescent, whatever they call it, and then the car track running down the middle of the street here (indicating).

"Q. Those tracks are considerably elevated above the level of the street?

"A. That is right.   They are very much elevated so I crossed the street car tracks, took the side across here, thinking there was a good sidewalk over here in the direction I was going, but when I got right here I found all through here was torn up and there were

planks placed from the level of the street car tracks, which you say are elevated above the ordinary level of the street, over to the curb. These planks were resting on some wooden forms. I don't know what they were there for, and from those forms the planks were broken in two. There would be one section here and this section here was all blocked right up. The planks ran over to those forms.

"Q. When did you first see where the boards were?

"A. Not until I was right on top of them.

"Q. After you crossed the railroad track you saw the boards here?

"A. Yes. I didn't see just how they were fixed.

"Q. At any rate, you saw the street was excavated and you had to cross it, if you crossed it at all, on those boards?

"A. Yes.

"Q. You say you were figuring on either catching a street car or jitney, which ever came first?

"A. Yes.

"Q. If you were catching a street car you would have to stay on this side of the street, wouldn't you?

"A. Not necessarily.

"Q. The street cars run in this direction coming to town?

"A. Yes; but, as I said, I had missed a street car and I knew it would be twelve or fifteen minutes before another street car came down there.

"Q. You are pretty familiar with the schedule of street cars and jitneys down there?

"A. Yes.

"Q. You go down there frequently?

"A. Very frequently.

"Q. Was this the first time you ever undertook to come over on this side to come down here so as to get that jitney?

"A. It was the first time I had for a week or ten

days—probably longer than that, but usually I am pretty lucky. I can time myself by walking down to the house and when I happen to miss one I—

"Q. You could see your way?

"A. No; I couldn't see very far in front of me and it wasn't until I saw the boards that I noticed they were excavating through here and on the other side here.

"Q. Finding that place and seeing—how wide was that board?

"A. I imagine it was about —

"Q. About fourteen inches?

"A. Yes.

"Q. Why did you not go back and get on the solid concrete on the other side of the street and go on down?

"A. As I said, there was no advantage in getting on the solid concrete. There was no sidewalk and the automobiles were coming. Especially it being slippery, I thought it was more dangerous to walk in the middle of the street than it would be to walk on the sidewalk on the other side of the street.

"Q. So you took your chances on crossing the board bridge rather than sticking to the concrete on that side?

"A. Yes.

And again he says:

"Q. What sort of crossing is that over here?

"A. In normal times?

"Q. Yes.

"A. Before they got through paving it there was sort of dip, but it was a pretty good crossing. It was graduated from the level of the street car track down.

"Q. Dirt or asphalt, or what?

"A. It was some solid mixture of dirt—probably crushed stone.

"Q. You didn't know who put those planks there, do you?

"A. No; I didn't know who put them there.

"Q. Had you ever seen them there before?

"A. No; I hadn't *seen* them there before and I wouldn't have attempted to use them if I had."

This accident to the plaintiff occurred not on the sidewalk but while he was crossing the roadway of the street in the night time, observing at the time necessarily that it was out of order.

[1, 2] Without undertaking to determine the question whether or not the plaintiff under the circumstances appearing in the evidence was guilty of contributory negligence, we are of opinion that the testimony is insufficient to establish on the part of the plaintiff any actionable negligence as a ground for liability of the defendants.   The plaintiff was not injured while walking upon the sidewalk in the ordinary manner with a right which is accorded to a pedestrian to assume that the sidewalk was in a reasonably safe condition for the use of pedestrians.   The accident occurred while he was in the roadway of the street going across at a crossing of two streets.

[3, 4, 5] The doctrine is well settled in Virginia that a municipality is under a legal duty to exercise reasonable care to keep its sidewalks in a reasonably safe condition for pedestrians using them with ordinary care. It is also well settled that it is likewise the duty of a municipal corporation to exercise like care to keep its roadways in a reasonably safe condition for the purpose for which they are intended to be used, including such ordinary uses as a pedestrian may make of a roadway crossing.   The city is not an insurer against accidents upon its streets, but its duty is uniformly expressed in the formula that it must exercise reasonable care in the respects just stated.

A city not only has a right to repair its streets, but it is its duty to do so, and the modern city should endeavor to keep up with the municipal improvements

in regard to the smooth paving of its streets under the present condition of vehicular traffic. *Portsmouth* v. *Lee*, 112 Va. 419, 71 S. E. 630.

[6] If it can be said that the plaintiff in the instant case was endeavoring to cross the street at a regular street crossing, *i. e.*, an extension of the sidewalk of a crossing street, still the principle is that though a street crossing is in a sense a part of the sidewalk, one passing over it may more easily expect obstructions and therefore must exercise a greater degree of care than on the sidewalk proper so called. This rule, of course, should apply more stringently where repairs are seen to be in progress in the roadway of the street or where it is apparently unusually obstructed: *Richmond* v. *Schonberger*, 111 Va. 168, 68 S. E. 284; *Richmond* v. *Mason*, 109 Va. 546, 65 S. E. 8, 17 Ann. Cas. 194.

[7] As already seen from the testimony of the plaintiff, it does not appear who placed the planks, upon which he sought to cross the wet and muddy street, in the position in which they were. The defendants denied that they placed them there or had them placed or knew that they were there on the night in question. It was insisted, therefore, by the defendants that the only presumption remaining was that some of the neighbors had placed the planks there on that evening in order to cross the roadway and prevent getting in the water or muddy street.

It was argued for the plaintiff in the instant case that regardless of the fact that the planks may have been placed where they were by some independent third party, yet the original conduct of the defendants in leaving the street in the condition in which it was constitued the proximate cause of his injury. It is needless to prosecute this inquiry unless the condition in which the street was left was an act of negligence on the part of the defendants. For whatever was the

cause of the injury to the plaintiff, it must be traced to a negligent act of the defendants, else it was a mere accident that may befall one upon the streets in the night time.

The roadway on the eastern half of the boulevard in question was free of obstructions at this point or comparatively level, and ran to the curbing next to the sidewalk, the curbing being about six inches above the dirt street as it stood. So far as this roadway was concerned, there was in our opinion no actionable negligence shown on the part of the city or of the contractors doing the work. It was not negligence on their part to fail to anticipate that a pedestrian crossing at night shortly after a rain fall would endeavor to walk through the rain water or mud or upon a temporary plank about twelve or fourteen inches wide, when under such circumstances he could have walked in complete safety on the smooth roadway on the other side of the railway tracks and crossed the street at some point close by.

[8] The learned judge of the trial court who heard all the testimony was of this opinion, or was of the opinion that the complainant was guilty of contributory negligence. It is incumbent upon the plaintiff in error to show error on the part of the trial judge in setting aside the verdict and entering judgment on the evidence. We do not think this has been done.

[9] A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. *Ricketts* v. *McCrory Co.*, 138 Va. 548, 121 S. E. 916; *Kendricks* v. *Norfolk*, 139 Va. 702, 124 S. E. 210.

[10] On all the evidence we are of opinion that the slight lowering of the grade of the street as appeared in this case was essential in the work of preparing it for the asphalt paving; that when so lowered by ex-

cavation or levellng off uneven surfaces and so made comparatively smooth, although a dirt street, there was nothing to induce a reasonable inference that it was in a dangerous condition for a pedestrian, even though he might desire to cross at a point where the street was lowered but the surface was fairly level. On the whole case we do not think a sufficient showing was made of negligence by the defendants to authorize a recovery by the plaintiff.

For these reasons the judgment of the lower court will be affirmed.

*Affirmed.*