## A94A0070. CULPEPPER v. CITY OF CORDELE et al.

(443 SE2d 642)

ANDREWS, Judge.

Culpepper, individually and as trustee of the trust of Fletcher, was the owner of two parcels of land annexed by the City of Cordele into its corporate limits. As owner, Culpepper brought a declaratory judgment action in the Superior Court of Crisp County seeking to invalidate the annexation of the two parcels and seeking an injunction preventing enforcement of the annexation. She appealed to the Supreme Court from the judgment of the trial court validating the annexation. The Supreme Court transferred the appeal to this court.

The parcels of land owned by Culpepper were a portion of numerous unincorporated areas within the City of Cordele which the city annexed by ordinance as "unincorporated islands" pursuant to Article 6 of Chapter 36 of OCGA Title 36. OCGA §§ 36-36-90 through 36-36-92. Culpepper claims that two of the unincorporated areas annexed by the ordinance — the two unincorporated areas in which her parcels of land were located — could not be lawfully annexed by city ordinance as "unincorporated islands" pursuant to Article 6.

Under Article 6, the city was authorized, by passage of an ordinance, to "annex to the existing corporate limits thereof unincorporated islands which are contiguous to the existing limits at the time of such annexation upon compliance with the procedures set forth in this article and in accordance with the procedures provided in Article 1 of this chapter." OCGA § 36-36-92 (a). An "unincorporated island" is defined in part as "[a]n unincorporated area in existence on January 1, 1991, and consisting of 50 acres or less with its aggregate external boundaries abutting the annexing municipality." OCGA § 36-36-90 (3) (A). A "contiguous area" is defined as "any unincorporated area which, on or after January 1, 1991, had an aggregate external boundary directly abutting a municipal boundary. Any area shall be considered 'contiguous' if the aggregate external boundary would directly abut the municipal boundary if not otherwise separated, in whole or in part, from the municipal boundary by lands owned by the municipal corporation, by lands owned by a county, or by lands owned by this state or by the definite width of: (A) Any street or street right of way; (B) Any creek or river; or (C) Any right of way of a railroad or other public service corporation." OCGA § 36-36-90 (1) (A), (B), (C).

In the annexation ordinance enacted December 15, 1992, the city, acting pursuant to Article 6, identified and annexed numerous separate areas of unincorporated land in a comprehensive effort to incorporate "unincorporated islands" contiguous to the existing corporate limits at the time of the annexation. The legal issues on appeal are identical as to each of the two annexed areas in which Culpepper's

land was located and center on whether the annexed areas exceeded the fifty-acre limit imposed on annexation of "unincorporated islands" under Article 6.[1]

It is undisputed that the contested annexations involved two separate unincorporated areas in existence on January 1, 1991. Each area had aggregate external boundaries abutting the Cordele corporate limits and each area consisted of more than 50 acres. It is also undisputed that a railroad right-of-way traversed both unconnected areas dividing the two unincorporated areas into four separate areas, each containing less than fifty acres. The city contends the railroad right-of-way was already an incorporated area of the city at the time of annexation and had been an incorporated area prior to January 1, 1991. Accordingly, the city's position is that the railroad right-of-way was an incorporated strip of land providing a municipal boundary which divided the two unincorporated areas exceeding fifty acres into four unincorporated areas, each containing less than fifty acres, each contiguous to the existing corporate limits, and each qualifying for annexation as an "unincorporated island" under Article 6. Culpepper contends the railroad right-of-way was an unincorporated strip of land traversing the two larger areas. Therefore, her position is that the two unincorporated areas were not divided by the railroad into four "unincorporated islands" of less than fifty acres. Rather, she contends the railroad right-of-way, along with the areas it traversed, formed two unincorporated areas in excess of fifty acres which the city could not lawfully annex by ordinance pursuant to Article 6.[2] Thus, the dispute over whether there was compliance with the annexation procedures of Article 6 hinges on whether or not the railroad right-of-way dividing the two large unincorporated areas was a part of the corporate limits of the city on or before January 1, 1991.

It is undisputed that after being rechartered effective January 1, 1970, the City of Cordele boundaries, as set forth in the rechartering Act (Ga. L. 1969, pp. 3806-3855), did not include the railroad right-of-way at issue and that from January 1, 1970 through January 1, 1991 the railroad right-of-way was not annexed into the city by local act of

---

[1] Under OCGA § 36-36-5, annexation of "unincorporated islands" consisting of more than 50 acres is controlled by the procedures set forth in Article 3 of Chapter 36. See OCGA §§ 36-36-30 through 36-36-40. OCGA § 36-36-5 also provides that "any land of less than 50 acres in size located within such an unincorporated island may be annexed through the use of the annexation methods contained in Article 2, 3, or 4 of [Chapter 36] or by a local Act of the General Assembly." It is undisputed that Culpepper's land was annexed under Article 6 and not under any of these alternative procedures.

[2] This is not a case where, but for the railroad right-of-way, an incorporated area would have been abutted on all boundaries by the municipal boundary, in which case the existence of the right-of-way would not prevent an otherwise lawful annexation under Article 6. See OCGA § 36-36-90 (1) (C). In the present case, the railroad right-of-way separates unincorporated areas from other unincorporated areas.

the General Assembly or pursuant to any municipal ordinance or resolution. Testimony presented to the trial court also showed that the current official city map, although containing a disclaimer as to its accuracy, did not include the railroad right-of-way within the corporate limits. Nevertheless, the assistant city manager testified that the railroad right-of-way was within the corporate limits prior to January 1, 1991. She concluded the right-of-way became an incorporated part of the city because the Cordele police investigated incidents along the right-of-way, and she had seen city fire trucks put out fires in the area. The city police chief also testified that the police investigated numerous accidents which occurred at the intersection of city streets with the railroad right-of-way. Although there was testimony that the city received payments for ad valorem taxes assessed by the state revenue commissioner on the railroad company owning the right-of-way, there was no indication as to whether this was a tax on any real property owned by the railroad located within the corporate limits or a tax on tangible personal property owned by the railroad within the city limits. See *Bd. of Tax Assessors of Wayne County v. Clary*, 161 Ga. App. 828, 829-830 (290 SE2d 110) (1982).

Although there was no evidence that the railroad right-of-way had been annexed into the city pursuant to legislative enactment or any method of municipal annexation under Chapter 36, the trial court concluded the railroad right-of-way became included within the Cordele corporate limits prior to January 1, 1991 by "de facto annexation."[3] Citing *Mayor &c. of Macon v. Morris*, 10 Ga. App. 298, 300 (73 SE 539) (1912), the trial court reasoned that the portion of the railroad right-of-way running through the corporate limits of Cordele should be considered included as part of the corporate limits of Cordele in the same manner that public streets encompassed within the expanded territory of a city become a part of the city for all municipal purposes. Proceeding from this conclusion, the trial court ruled that the railroad right-of-way was an incorporated part of Cordele and acted as a municipal boundary which traversed the two larger areas and divided them into four unincorporated islands of less than fifty acres, all four of which were in existence on January 1, 1991 and contiguous to the existing corporate limits at the time of annexation. Accordingly, the trial court concluded the city ordinance accomplished a valid annexation of Culpepper's land pursuant to Article 6.

---

[3] There was other evidence that the railroad right-of-way was not an incorporated portion of the city at the time Culpepper's property was annexed. The annexation ordinance at issue included a general paragraph annexing all railroad rights-of-way within the corporate limits not previously annexed. Because of its conclusion that the right-of-way had been previously incorporated into the city, the trial court held that this paragraph of the ordinance was "mere surplusage."

We cannot agree with this conclusion. The rule stated in *Morris*, supra, is that territory lawfully annexed into a city becomes a part of the city for all municipal purposes and that public streets included as part of the newly annexed territory, which were previously maintained by others prior to the annexation, must be kept reasonably safe by the city after the annexation. See *Bush v. City of Gainesville*, 105 Ga. App. 381, 383-384 (124 SE2d 667) (1962); *Ga. R. &c. Co. v. Tompkins*, 138 Ga. 596, 600 (75 SE 664) (1912). This rule is not authority supporting de facto annexation and has no application to a private railroad right-of-way, not previously annexed, which traverses the city limits. Evidence of city police investigation of incidents at public street crossings along the right-of-way, and other evidence of limited city police and fire protection provided along the right-of-way as it abutted the city, did not result in annexation of the railroad right-of-way into the city. It is undisputed that the railroad right-of-way was not annexed into the city by a local statute of the General Assembly nor under the applicable general statutes by which the General Assembly has delegated legislative authority to the city to alter its boundaries. See the Municipal Home Rule Act of 1965 (OCGA § 36-35-2 (a)); Chapter 36 of OCGA Title 36 (OCGA §§ 36-36-1 through 36-36-92); *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1 (178 SE2d 868) (1970); *Bruck v. City of Temple*, 240 Ga. 411, 412-413, nn. 2, 3 (240 SE2d 876) (1977); *Niskey Lake Water Works v. Garner*, 228 Ga. 864, 866 (188 SE2d 864) (1972); *Lee v. City of Jesup*, 222 Ga. 530, 531-532 (150 SE2d 836) (1966). In the absence of any evidence that the railroad right-of-way was annexed into the city by any of the above methods, there was no support for the conclusion that the right-of-way was an incorporated portion of the city and the trial court erred by ruling that it was de facto annexed into the city.

Since it was an unincorporated strip of land, the right-of-way and the two unincorporated areas it traversed formed unincorporated areas in excess of fifty acres which the city could not lawfully annex by the ordinance it passed pursuant to Article 6. Accordingly, to the extent the city ordinance attempted to annex Culpepper's land, which was located within unincorporated areas exceeding 50 acres, it was invalid and unenforceable.[4]

*Judgment reversed. Beasley, P. J., and Johnson, J., concur.*

---

[4] We have addressed appellant's various enumerations of error to the extent necessary to decide the issues raised. Any enumerations not specifically addressed were either rendered moot by our decision or were not necessary to resolution of the issues.

DECIDED APRIL 13, 1994.

*Culpepper, Pfeiffer & Harpe, Guy D. Pfeiffer*, for appellant.
*Roberts, Roberts & Ingram, Guy V. Roberts, Jr.*, for appellees.