## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

CITY OF RICHMOND AND ANOTHER v. SCHONBERGER.

June 9, 1910.

Absent, Harrison, J.

1. MUNICIPAL CORPORATIONS—*Defective Streets—Reasonably Safe Condition.*—A municipal corporation is not an insurer against accidents upon its streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day.

2. MUNICIPAL CORPORATIONS—*Street Crossings—Care in Use of—Case at Bar.*—A street crossing is, in a sense, a part of the sidewalk, but one passing over it may more reasonably expect obstructions, and should, therefore, exercise a greater degree of care than upon the sidewalk, strictly so-called. In the case at bar, the crossing consisted of two parallel courses of flagging stones, laid smooth and level, separated by a small space which was filled in with pieces of stone, one of which projected about two inches above the level, but which had been left in good condition four days before the accident sued for. For an injury resulting from stumbling over the projecting stone, it was held there could be no recovery.

Error to a judgment of the Circuit Court of the city of Richmond in an action of trespass on the case. Judgment for the plaintiff against two of the defendants, to which the latter assign error.

*Reversed.*

The opinion states the case.

*Henry R. Pollard, Emmett Seaton* and *Bev. T. Crump,* for the plaintiffs in error.

*L. O. Wendenburg*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Mary E. Schonberger, an infant under twenty-one years of age, brought suit by her next friend against the city of Richmond, William E. Fletcher and Charles Gasser, to recover damages for an injury received by her, due, as she claims, to their negligent conduct.

It is the duty of the city of Richmond to keep its streets in a reasonably safe condition, and in the performance of this duty it employed the defendants, Fletcher and Gasser, to put in proper order the crossing on the south side of Louisiana street at its intersection with Eighth street. The crossing was made of two parallel lines of stone flagging, separated from each other by a short distance, the intervening space to be filled in with stones. The declaration alleges that it is the duty of the city in paving and filling in this space to do the work so as not to cause the same to be a defect in and obstruction upon Eighth street, but that the city and its employees, unmindful of their duty in this behalf, filled in the open space beween the lines of flagging with stone blocks, and left them projecting above the level of the flagging about two and one-half inches, against which the plaintiff, without negligence on her part, struck her foot while crossing Eighth street in the night time, and was thrown and greatly injured.

Fletcher and Gasser were made parties defendant by virtue of a provision of the charter of the city (Acts 1899, p. 288) which provides, that "In any action against the city to recover damages against it, for any negligence in the construction and maintenance of its streets, alleys or parks, where any person is liable with the city for such negligence, every such person shall be joined as defendant with the city in any action brought to recover damages for such negligence, and where

there is a judgment or verdict against the city, as well as the other defendant, it shall be ascertained by either the court or the jury which of the defendants is primarily liable for the damages assessed."

The case was tried before a jury, which rendered a verdict in favor of the defendant Gasser, and against the city of Richmond and William E. Fletcher for the sum of $3,000, and further found that Fletcher was primarily liable therefor. During the progress of the trial numerous exceptions were taken, but in the view that we take of the case it will only be necessary to consider one of them, as its decision will be conclusive of the controversy and render unnecessary the consideration of subordinate questions.

Stating the case of the defendant in error as strongly as is warranted by the evidence, it amounts to this: On the evening of May 16, 1908, she with two other female companions were passing along Louisiana street, going in the direction of Williamsburg avenue. When she reached the crossing of Eighth street the light fell so as to throw a shadow over the crossing. She stepped down from the sidewalk on the crossing, struck her foot against an obstacle and fell, sustaining the injuries for which she sues. The crossing consists of two parallel paths or courses of flagging stones, laid smooth and level, separated by a small space which was filled in with pieces of stone, one of which projected about two inches above the level. The proof is that this work was done in the usual way, and that it was left four days before the accident, by the contractor under whose supervision the work was done, in good condition; that having laid the paving stones, the intervening space was filled in with loose stones and covered with earth, the custom being to leave the crossing in that condition, to be finished with granite blocks by those employed to do that part of the work.

We are of opinion that the obstruction was not such as to render the city liable in damages.

In *City of Richmond* v. *Courtney*, 32 Gratt. 798, it is said by Judge Christian, in whose opinion Judge Moncure concurred, that "A municipal corporation is not an insurer against accidents upon its streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day. It is not to be expected, and ought not to be required, that a city should keep its streets at perfectly level and even surface. Slight obstructions, produced by loose bricks in the pavement, or by the roots of trees which may displace the pavement, from the very nature of things cannot be prevented. And so there cannot be perfect uniformity of a level surface where curbstones and culverts are necessary to be constructed on the streets. In a large city, with many miles of paved streets, it must often happen from the very nature of the material out of which the pavement is constructed, that the bricks from the very wear and tear of the use to which they are subjected, will become broken and displaced so as to cause the fall of a person not careful in walking over them. Certainly if the obstructions are of such a character as those indicated, and which would not cause the fall of a person exercising ordinary care, the city in such case could not be held liable."

The obstruction in that case consisted of a place in the pavement 3x5 feet, or thereabouts, from which bricks had been removed and loose bricks were lying about in the opening—certainly a more serious obstruction than the one under consideration. In that case the obstruction was upon the sidewalk; in this, the obstruction was upon the crossing of a street, which it is true may be considered, in a sense, as a part of the sidewalk; but it is only reasonable to say that one passing over a street crossing may more reasonably expect obstructions,

and should, therefore, exercise a greater degree of care than upon the sidewalk, strictly so-called. To hold the city liable for every slight inequality in its streets would, we think, be altogether unreasonable.

In *Bigelow* v. *City of Kalamazoo*, 97 Mich. 121, 56 N. W. 339, it is said: "Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from two to six inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon which pedestians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe, but they may be reasonably so. Neither streets, sidewalks, nor cross-walks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms. . . . Cities are not required to keep streets in a condition absolutely safe for travel. A cross-walk must be reasonably safe; reasonably safe in view of the purpose for which it is constructed, the necessary uses of the street, and all the varying conditions."

In *Weisse* v. *City of Detroit*, 105 Mich. 482, 63 N. W. 423, it appears that there was a rise in a cross-walk, caused by one end of a plank, lying lengthwise in the walk, being raised two inches above the adjoining plank. It was held not a defect in the walk so that it was not reasonably safe for travel. The court said: "If the plaintiff could recover in this case, every municipality would be compelled to exercise the most vigilant care over its streets to see that no rise of two inches occurred along the line of travel on side and cross-walks."

We are of opinion that neither the city of Richmond nor Fletcher was guilty of actionable negligence. The judgment of the circuit court must, therefore, be reversed, the verdict set aside, and the cause remanded for a new trial, to be had, not inconsistent with the views expressed in this opinion.

*Reversed.*