## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### CITY OF RICHMOND V. ROSE.

March 18, 1920.

Absent, Burks, J.

REHEARD JANUARY 20, 1921.

1. SIDEWALKS—*Liability of Municipality—Not Liable as Insurer.*— A municipal corporation is not liable as an insurer against accidents upon its sidewalks. Not every defect in a sidewalk, though it may cause the injury sued for, is actionable. The municipality will not be liable for every mere inequality or irregularity in the surface of the way not likely to cause injury. It is only against danger which it can or ought to anticipate, in the exercise of reasonable forethought, in view of the actual condition of the way (if it has actual or constructive notice thereof), that the municipality is bound to guard.

2. SIDEWALKS—*Duty of Pedestrian—Presumption that Sidewalk is Safe.*—With respect to a pedestrian, the condition of the sidewalk will be held to be only what it appears or would appear to be to him in the exercise of ordinary care on his part to avoid an accident. If he has no previous knowledge of a defect in the way, he owes no duty of inspection to discover it, and he is not required to be on the lookout for defects or obstructions. In the absence of knowledge to the contrary, he may, if the exercise of reasonable or ordinary care under the circumstances would not give him that knowledge, act on the assumption that the way is in a reasonably or ordinarily safe condition.

3. SIDEWALKS—*Duty of Pedestrian—Open and Obvious Dangers.*— But a pedestrian may not negligently disregard dangers which are so open and obvious that they would be apparent to an ordinarily prudent person in a like situation.

4. SIDEWALKS—*Municipality's Duty to Inspect.*—A municipality is charged with the duty of reasonable inspection of its sidewalks, and the condition of the sidewalk will be held to be what it in truth is, if such inspection would disclose it.

5. SIDEWALKS—*Defects—Question for Jury.*—Whether a defect in a

sidewalk. was actionable, in that it was a condition which the city, in the exercise of reasonable forethought, ought to have anticipated would render the sidewalk unreasonably unsafe for travel, is ordinarily a question of fact for the jury.

6. DEMURRER TO THE EVIDENCE—*Facts Which Jury Might Have Found Against Demurrant Must be so Found by Court.*—On demurrer to the evidence facts which upon the evidence admit of different conclusions by reasonable men must be found against the demurrant.

7. SIDEWALKS—*Safety of Sidewalk—Dependent Upon Facts of Particular Case.*—In each case the way is to be pronounced sufficient or insufficient, as it is or is not reasonably safe for ordinary purposes of travel *under the particular circumstances* which exist in connection *with that particular case.*

8. SIDEWALKS—*Liability of Municipality—Slight Defects.*—Where the obstruction in the way is so slight that the minds of reasonable men would not differ in the conclusion that it would not be likely to endanger travel in the ordinary modes by persons exercising reasonable or ordinary care, a verdict undertaking to establish the primary liability of the municipality will not be sustained.

9. SIDEWALKS—*Defective Sidewalk—Duty of City.*—A city is charged with the duty of exercising reasonable forethought on the subject of what is likely to be the result from the actual condition of the sidewalk upon the safety with which a pedestrian would traverse it, walking slowly, who before near approach to the defect in the sidewalk might well look upon the defect as but one of the grooves across the cement walk, to be seen at regular intervals.

10. SIDEWALKS—*Safety of Sidewalk—Duty of City—Obvious Danger.*—Where travel was not attempted to be stopped on a sidewalk, the defense of the city that the defect was not actionable must rest on the position that the defect was too slight to be actionable. The municipality will not be allowed, in such a case, to urge, in justification of its leaving it there, that a defect in its streets is so large that it is obviously an obstruction and a menace to pedestrians.

11. SIDEWALKS—*Defect—Slight Defect—Case at Bar.*—A section of a sidewalk had been lifted by the roots of a shade tree above the level of the sidewalk. At the inner edge the lifted section stood one-half inch, and at the outer edge two inches, above the level of the rest of the sidewalk. Plaintiff struck her foot against this inequality and fell forward upon the sidewalk receiving serious injury.

*Held:* That the obstruction was not so slight that it could be held, as a matter of law, not to constitute an actionable defect.

12. SIDEWALKS—*Duty of Pedestrian—Street Crossing.*—One passing over a street crossing may more reasonably expect obstructions, and should therefore exercise a greater degree of care than upon the sidewalk, strictly so called.

13. SIDEWALKS—*Contributory Negligence—Size of Defect.*—Where plaintiff was injured by striking her foot against an obstruction in the sidewalk, it cannot be said from the mere size of the obstruction that plaintiff was guilty of contributory negligence. That question involves, not alone the size of the obstruction, but also all the circumstances which surrounded the plaintiff at the time of the accident, and her conduct in the light of these circumstances.

14. SIDEWALKS—*Contributory Negligence—Case at Bar.*—In an action by a pedestrian against the city for injury sustained by reason of a defective sidewalk, it appeared from the evidence that the obstruction was not great, being very slight indeed on one side of the sidewalk and gradually increasing towards the other side, so that it might have been mistaken for an ordinary groove in the walk; that the sunlight was in the face of the plaintiff; that her attention was attracted elsewhere until she was so near the defect that she might naturally have failed to detect it; and that plaintiff had no knowledge of the defective condition of the sidewalk previous to the accident.

    *Held:* That the question of plaintiff's contributory negligence under these and other circumstances of the case was for the jury.

15. SIDEWALKS — *Contributory Negligence — Question for Jury.*— Whether or not the person, injured by reason of a defect or obstruction, exercised ordinary care and diligence at the time of the accident, depends upon the surrounding circumstances existing at that time and place, and upon the danger reasonably to be apprehended, and is ordinarily a question of fact for a jury.

16. SIDEWALKS—*Contributory Negligence—Presumptions and Burden of Proof.*—In an action against a city for injuries incurred through a defective sidewalk, the burden of proof of showing contributory negligence on the part of the plaintiff is upon the city, unless it appears affirmatively from the evidence for the plaintiff.

Error to a judgment of the Law and Equity Court of city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action by the defendant in error, Marion S. Rose, against the city of Richmond, to recover damages for injury sustained by a fall alleged to have been caused by the defective condition of a sidewalk of the city.

The defendant in error will be hereinafter referred to as plaintiff.

There was a trial by jury.  After the testimony both for the plaintiff and defendant was in and there had been a view by the jury, the city demurred to the evidence.  The jury returned a verdict in favor of the plaintiff, subject to the demurrer to evidence.  Whereupon the court overruled such demurrer and entered judgment for the plaintiff in accordance with the verdict.  Thereupon the city moved the court to set aside the judgment and verdict on the ground that the verdict was contrary to the law and the evidence.

The material facts of the case shown by the evidence, as it must be regarded upon demurrer thereto, are as follows:

The accident occurred on one of the sidewalks of Poe street.

The sidewalks on both sides of the street are of concrete three feet in width.  Between the sidewalks and the curbing of the street are grass plots, approximately of the same width as the sidewalks, in which plots shade trees of considerable size were standing at the time of the accident, at intervals along on both sides of the street, the whole length of the block.  The street runs approximately due east and west.  The accident occurred on the sidewalk on the north side of the street at a point, as one goes westward, about sixteen feet from the corner of the block where such street is crossed by Barton avenue.  The defect in the sidewalk consisted in this: A section of the sidewalk, approximately ten (10) feet in length, between its expansion joints, had been lifted by the roots of a shade tree growing in its location about opposite the centre of such section of sidewalk, as shown by the diagram (Ex. A.) in evidence, so that such

section was lifted above the level of the sidewalk elsewhere on that side of the street. A difference in level existed all the way across the sidewalk at both ends of the lifted section along the lines of the expansion joints, at right angles to the sidewalk, but it was not the same difference at the inner edge of the sidewalk, next to the building line, as it was at the outer edge, next to the street curbing and the tree. At the inner edge the lifted section stood one-half inch and at the outer edge two inches above the level of the other sidewalk, at both ends of it. There was no break in the section aforesaid, other than its being lifted in the manner described at the expansion joints, which caused the surface of the ends of such section to stand perpendicularly above the level of the sidewalk which joined it at such ends, the elevation being a half-inch at the inner edge gradually increasing to two inches at the outer edge as aforesaid.

The evidence shows affirmatively that the defect aforesaid was the only inequality in the level of the sidewalk on the north side of the street for the entire block on which the accident occurred. And the evidence does not disclose that there were any inequalities in the level of the sidewalk elsewhere on that side of the street or on the south side of it.

The only material conflict that there is in the case, between the evidence for the plaintiff and that for the city, is on the subject of the obviousness of the obstruction on the sidewalk occasioned by the defect aforesaid. On this subject in behalf of the plaintiff (among other circumstances in their nature difficult to recount, but at once apparent to a jury on a view after hearing the testimony in the case), the following facts appear in the record:

The elevation of the section of sidewalk aforesaid was in fact high enough to catch the foot of the plaintiff as she was walking slowly and did in fact cause her fall and resulting injury. Further:

The plaintiff did not in fact observe the difference in the

elevation aforesaid until she struck her foot against it and fell.

The accident occurred about 2 P. M. on a March day (the 15th of March) when the sun was shining brightly. The plaintiff was walking westward on the outer side of the sidewalk, because of the fact that a servant was walking along the inner side of it; the plaintiff being as nearly beside the servant as the width of the walkway would permit, but a little to the rear of the servant. The plaintiff wore her glasses at the time. She was not in a hurry and was walking very slowly, as her nine months old baby, in its carriage, was being rolled along by the servant, and as the plaintiff did not allow the carriage to be rolled fast on account of jarring the baby. The plaintiff did not live in that locality. She was on her way to her mother's who lived on North avenue. When before that time on Poe street the plaintiff as a rule walked on the south side of it. She had no knowledge of the defect aforesaid on the north side of the street. On this occasion, as she, the baby and nurse came to Poe street, instead of turning westward along it on its south side, as the plaintiff's custom was, the servant crossed over to the north side and the plaintiff "made no objection," as she testifies "because it was a chilly day and (she) thought it was very well for the baby to be on the sunny side of the street." As they moved along on that side of the street as aforesaid and approached the obstruction aforesaid the plaintiff saw an acquaintance in an automobile approaching going eastward along Poe street. How long she looked in his direction does not appear from the evidence, but she did look towards him and at that hour the sun would have shone almost directly in her face as she looked in that direction, moving, as she was, practically due westward. She bowed her head in greeting to this acquaintance as he passed. As the latter passed, the plaintiff was "about two steps" from the obstruction aforesaid caused

98

by the end of the lifted section of sidewalk nearest her, according to the testimony of a witness for plaintiff. She did not stop at all, but after looking towards the acquaintance (for how long does not appear as aforesaid), and having bowed to him, she turned her gaze back in front of her, "looking straight ahead" as she walked, as she testifies, but as aforesaid, she did not see the obstruction until she struck her foot against it and fell forward upon the sidewalk, causing her serious injury. At that time of the year, of course, there could have been no great amount of foliage, if any, on the tree aforesaid, which had lifted the section of walkway as aforesaid (and the evidence is silent on this point), but it seems quite sure that its branches and perhaps its trunk, stood at that hour directly between the sun and the obstruction over which the plaintiff stumbled. And as to what shadow they cast on such obstruction the evidence is also silent, but they must have cast some shadow upon it. There were normal grooves at right angles across the concrete sidewalk, at intervals of approximately every five feet, and where the obstruction aforesaid existed a groove was normally to be expected to be seen by a traveler along the sidewalk. Such grooves, where normal, caused no inequality in the level of the sidewalk.

In addition to such circumstantial evidence on behalf of the plaintiff, on the subject of the obviousness of the obstruction, there was the express testimony of a witness for the plaintiff, which was not objected to by the city, in which, referring to the appearance of the inequality in level of the sidewalk caused by said obstruction, such witness said: "Yes, sir, it is an abrupt rise, and you really can't detect it unless you are paying particular attention, just walking in a casual way."

On behalf of the city, certain photographs were introduced in evidence which were taken on February 10th, nearly a year after the accident. These photographs do

show the obstruction very plainly apparent at a distance of 100 feet, and also from nearer by, and it is proved for the city that the height of the obstruction aforesaid was the same when the photographs were taken as it was at the time of the accident. But the photographer who took the pictures was not examined as a witness, and it does not appear in evidence at what time of day, or under what conditions of light or shade or other circumstances they were taken.

There was no evidence in the record tending to show that no accident had previously resulted from the defect in the sidewalk aforesaid.

*H. R. Pollard,* for the plaintiff in error.

*Fulton & Wicker,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The controversy in the case in judgment is not one of law, but of fact.

The law applicable to cases of this character is well settled.

There are two issues involved, (1) whether the municipality was primarily liable, and if so, (2) whether there was contributory negligence on the part of the plaintiff which barred her right of recovery.

[1] The primary liability of the municipality, if it existed, must have arisen from its breach of duty in its failure to exercise reasonable or ordinary care under the circumstances to keep its sidewalk in a reasonably safe condition for travel in the ordinary modes by persons exercising reasonable or ordinary care on their part under the circumstances to avoid accident.

The duty of the municipality in the premises was not that of an insurer against accident upon the sidewalk. Not every defect, though it may cause the injury sued for, is actionable. The municipality will not be liable for every mere inequality or irregularity in the surface of the way not likely to cause injury. It is only against danger which it can or ought to anticipate, in the exercise of reasonable forethought, in view of the actual condition of the way (if it has actual or constructive notice thereof), that the municipality is bound to guard.

[2-4] In the latter particular, however, the duty of the municipality is different from that of the person using the way. With respect to such person the condition will be held to be only what it appears or would appear to be to him in the exercise of ordinary care on his part to avoid accident. If he has no previous knowledge of a defect in the way, he owes no duty of inspection to discover it, and he is not required to be on the lookout for defects or obstructions. In the absence of knowledge to the contrary, he may, if the exercise of reasonable or ordinary care under the circumstances would not give him that knowledge, act on the assumption that the way is in a reasonably or ordinarily safe condition. But he may not negligently disregard dangers which are so open and obvious that they would be apparent to an ordinarily prudent person in a like situation. Whereas with respect to the municipality, it is charged with the duty of reasonable inspection, and the condition will be held to be what it in truth is, if such inspection would disclose it.

That the above is the substantive law on the subjects mentioned all the authorities agree. Among them are the following, which are cited in argument before us. 4 Dillon on Mun. Corp. (5th ed.), sections 1697, 1711; 28 Cyc. 1358-1361, 1366-7, 1396; *Bedford City* v. *Sitwell*, 110 Va. 296, 65 S. E. 471; *Osborne* v. *Pulaski, etc., Co.,* 95 Va. 17, 27 S. E.

812; *Moore* v. *Richmond,* 85 Va. 545, 8 S. E. 387; *Portsmouth* v. *Lee,* 112 Va. 430, 71 S. E. 630; *Cook's Adm'r* v. *Danville,* 116 Va. 385, 82 S. E. 90, L. R. A. 1915A, 1199; *Newport News, etc., R. Co.* v. *Clark's Adm'r,* 105 Va. 205, 52 S. E. 1010, 6 L. R. A. (N. S.) 905, 115 Am. St. Rep. 868; *Richmond* v. *Schonberger,* 111 Va. 168, 68 S. E. 284; *Richmond* v. *Courtney,* 32 Gratt. (73 Va.) 792.

It is a *concessum* in the case in judgment that the defective condition of the sidewalk had existed for an amply sufficient time before the accident to have given the city actual or constructive notice of such condition, and it took no steps to remedy that condition. And the city took the position on the trial, as one of its defenses, that the actual condition of the sidewalk did not present a case of an actionable defect.

1. The first question for our decision, therefore, is whether, but for the demurrer to evidence, there was sufficient evidence before the jury to have warranted them in finding that the unevenness in the sidewalk, which is described in the statement preceding this opinion, was an actionable defect, in that it was a condition which the city, in the exercise of reasonable forethought, ought to have anticipated would render the sidewalk unreasonably unsafe for travel in the ordinary modes by persons exercising reasonable or oridnary care on their part under the circumstances to avoid accident?

[5, 6] In the very nature of the case the problem involved in this question is ordinarily essentially a jury question. It is a complicated question of fact. It is not simply a matter of the height of the obstruction, but also of how unexpected its existence was to a person, such as the plaintiff, who had encountered no such obstructions elsewhere in that locality, and who did not previously know of its existence; of what its appearance would reasonably be expected to be to one approaching it under the circum-

stances which attended the plaintiff—some of which circumstances are mentioned in the statement preceding this opinion, none of which were extraordinary, and hence all of which might have reasonably been anticipated by the city by the exercise of reasonable forethought; and whether such person in the exercise of ordinary care would be expected to detect the true condition of the defect if approaching it under the circumstances which attended the plaintiff. These are all matters in their nature unsuited for decision other than by a jury, being in the case before us of such character that they admit of different conclusions by reasonable men. And we think, as did the learned trial Judge, that on the demurrer to evidence by the city such question of fact is concluded against the city.

[7] Decided cases are of but little assistance to the court in the consideration of such a question as that here before us. The authorities emphasize the truth that in this character of cases, especially—*"In each case* the way is to be pronounced sufficient or insufficient as it is or 'is not reasonably safe for ordinary purposes of travel *under the particular circumstances* which exist in connection *with that particular case* * *."* 28 Cyc. 1366-7. (Italics supplied.)

[8] It is of course true that where the obstruction in the way is so slight that the minds of reasonable men would not differ in the conclusion that it would not be likely to endanger travel in the ordinary modes by persons exercising reasonable or ordinary care, the court would not sustain a verdict undertaking to establish the primary liability of the municipality aforesaid; but such is not the character of case before us.

[9] As above noted, the city, on this question, is charged with the duty of exercising reasonable forethought on the subject of what is likely to be the result from the actual condition of the sidewalk upon the safety with which a pedestrian, such as was the plaintiff, would traverse it,

walking slowly, who before near approach to it might well
look upon it as but one of the grooves across the walk to
be seen at the regular intervals of about five feet, because
of possibly having looked only at the inner edge of the walk-
way, where the unevenness was scarcely perceptible even
upon close inspection, or because of the condition of light
or shade at the time, and whose attention might then be
attracted elsewhere by some ordinary cause until imme-
diately upon the defect, when the person might be likely to
look over and beyond it and not observe its true character,
induced, it might be, so to do, by a previous subconscious ob-
servation and appraisal of it as but a normal groove across
the walk.

[10]  It should be borne in mind that, as travel was not
attempted to be stopped, but was permitted on the walkway
in question, the defense of the city, that the defect was not
actionable, must rest on the position that the defect was
too slight to be actionable.  The municipality will not be
allowed, in such a case, to urge in justification of its leav-
ing it there, that a defect in its streets is so large that it
is obviously an obstruction and a menace to pedestrians—
as, for example, where the defect consists in an obstruction
seven and two-tenths inches high, as in *Richmond* v. *Gentry,*
111 Va. 160, 68 S. E. 274.  That would be to allow the
municipality to defend by setting up its own wrong, con-
sisting of its own gross neglect of duty in the premises.
Hence the court will not hold as a matter of law that such
a defect is so large—*i. e.,* that the municipality's negligence
has been so gross—that the defect is not actionable.  If it
were otherwise municipalities would need only to be grossly
negligent in the premises in order to be relieved of the duty
of keeping their streets in proper condition for public travel.
The defense of the municipality in such case, if defense it
has, must rest upon the position that the plaintiff has been
guilty of contributory negligence, which will bar recovery
notwithstanding that the defect is actionable.

In the case last cited (*Richmond* v. *Gentry*, 111 Va. 160, 68 S. E. 274), the uncontroverted facts were that the defect consisted of a stone, in size three feet six inches long, by one foot in width and six-tenths of a foot in thickness at the end against which the plaintiff stumbled, resting on the surface of the sidewalk, ten inches from the front of a building for an entrance step to which the stone was used, and there, too, the uncontroverted fact was also that the plaintiff "had often passed the point and knew of the stone on the sidewalk." But this court in the opinion delivered by Judge Keith, approved the action of the trial court in refusing to give an instruction to the effect that as a matter of law such an obstruction did not constitute an actionable defect.

And, indeed, in the last named decision the court did not consider that it was even a case in which it could say, as a matter of law, that the plaintiff had been guilty of such contributory negligence as barred recovery.

[11] There is no case in Virginia, which has been cited in argument, in which this court has held that the obstruction was so slight that it will be held, as a matter of law, not to constitute an actionable defect, where the obstruction was as great as in the case in judgment. The nearest Virginia case to the one before us on this point is that of *Richmond* v. *Courtney, supra,* 73 Va. (32 Gratt.) 792. There the obstruction, if there was any difference in its essential character, was less likely to cause the fall of a person walking slowly over it under ordinary circumstances than the obstruction in the case in judgment. As said in the opinion of Judge Christian in that case of the obstruction there involved: "The plaintiff herself described it as a broken place in the sidewalk and says that she struck her foot against a loose brick in the sidewalk and fell. She says further that the pavement was broken up, and that she fell in among the loose bricks. Another witness * * describes the

defects as follows: 'It consisted of a place in the pavement 3 x 5 feet or thereabouts, from which bricks had been removed, and a few bricks were lying about loose in the opening; * * there was no excavation, and that he had never heard of any one else stumbling there; that he himself had walked over the place many a time and never thought it dangerous.' "

Judge Christian in his opinion does take the position that, as a matter of law, the city was not guilty of negligence with respect to the defect in the pavement—*i. e.,* that the defect was not actionable—and in that connection says: "Slight obstructions, produced by loose bricks in the pavement, or by the roots of trees which may displace the pavement, from the nature of things, cannot be prevented." But that was not the majority holding. Only one other judge (Judge Moncure), concurred in Judge Christian's opinion. Judge Staples said "he was not prepared to concur in so much of the opinion of Judge Christian as declares that the city of Richmond is not guilty of negligence with respect to the defect in the pavement." Judge E. C. Burks concurred in the view of Judge Staples. The case was decided in favor of the city, however, on the ground of the contributory negligence of the plaintiff, of which we shall have more to say below; and Judge Anderson concurred in the judgment to that effect.

Similarly in *Redford* v. *City of Woburn,* 176 Mass. 520, 57 N. E. 1008, it is held, as stated in the opinion, that, "* we do not think it could be ruled as a matter of law that the jury were not warranted in finding that a shut-off box in the middle of a sidewalk much used for foot travel, projecting on one side an inch and a quarter above the surrounding gravel, did not constitute a defect. Whether such an object was liable to cause travelers, while in the exercise of due care, to stumble and fall, or to turn or sprain the ankle, as we infer the plaintiff did, and whether the de-

99

fendant exercised reasonable care in suffering the box and sidewalk to remain in the condition in which they were, it seems to us, questions for the jury." Citing a number of Massachusetts cases.

And in *Parrish* v. *City of Huntington*, 57 W. Va. 286, 50 S. E. 416, it is held, as stated in the opinion of the court, that—

"While it is true, as stated, that a municipal corporation is not an insurer against accidents on its streets and highways, yet it is charged with the exercise of due and reasonable care in keeping and maintaining its streets so as to prevent injury to persons traveling over them. In this case two water plugs, one projecting 2¾ inches, and the other 1¾ inches, above the sidewalk, and near the center thereof, seem to be a very dangerous contrivance to be permitted to exist at a point where persons have the lawful right to go, and where pedestrians are daily traveling. In using the sidewalks of a city, a pedestrian has the right to presume that they are kept in a reasonably safe condition for travel.

"In this case, suppose such a person as could be charged with contributory negligence should be passing over the sidewalk of the defendant at the point where the accident occurred, and not knowing of the existing defect, and should stumble over it and be injured by reason thereof, the city would be liable, unless contributory negligence could be charged against him * * *."

Among the cases cited for the city, in which the defect in the way was held as a matter of law not to be actionable, are the following, which approach nearest in their facts to the case in judgment: *Weisse* v. *Detroit*, 105 Mich. 482, 63 N. W. 423; *Hamilton* v. *Buffalo*, 173 N. Y. 72; 65 N. E. 944; *Beltz* v. *Yonkers*, 148 N. Y. 67, 42 N. E. 401.

[12] In *Weisse* v. *Detroit*, the alleged defect was one of original construction of a cross walk in that it was about

1½ inches above the sidewalk where the two joined.    But, as said in *Richmond* v. *Schonberger,* 111 Va. 168, at p. 171, 68 S. E. 284, at p. 285 : "\* \* it is only reasonable to say that one passing over a street crossing may more reasonably expect obstructions and should therefore exercise a greater degree of care than upon the sidewalk strictly so-called," hence the *Weisse* v. *Detroit Case* is distinguishable from the case in judgment.

In *Hamilton* v. *Buffalo,* the defect was different from that in the case in judgment, being a depression.    Moreover, the plaintiff walked over it four or five times a day, was familiar with it, had often noticed it before the accident, and the plaintiff himself testified that he had not considered it at all dangerous.    And the court said in its opinion—"evidently it did not occur to him that it was dangerous or that accidents were reasonably to be anticipated by its existence."    Hence it was held that no such duty of anticipation rested upon the city.

In *Boltz* v. *Yonkers,* also, the defect was a depression, 2½ inches deep, and 7½ x 26 inches in surface area, caused by the removal of broken parts of the flag-stone paving of a sidewalk from about the center of the way.    The sidewalk was eight feet wide, leaving ample space on each side of the depression for passage free of any defect.    And as affirmatively appeared in evidence, the walkway had been used by the public in that condition "for years," and that "no accident had resulted from such use before."

On principle, therefore, and upon authority we are of opinion that there was sufficient evidence in the case in judgment to have supported a verdict of the jury, had not the demurrer been interposed, holding, in effect, in accord with the opinions of Judges Staples and E. C. Burks, in *Richmond* v. *Courtney,* that the defect in the sidewalk in the case in judgment was actionable.

We come now to the only question remaining for our decision in this case, and that is this:

2. Was the evidence before the jury such that, but for the demurrer to evidence, they would have been warranted in finding that the plaintiff was not guilty of contributory negligence which proximately contributed to her injury?

[13]   The conclusion we have reached above, that the jury might have found, and hence, there having been the demurrer to the evidence by the city we must find, that the defect in the case in judgment was actionable, demonstrates that the plaintiff was entitled to recover if she was exercising due care at the time she fell, since her fall was unquestionably occasioned by the defect. Therefore the court cannot say, as a matter of law, from the mere size of the obstruction caused by this particular defect that the plaintiff was guilty of contributory negligence. The latter question necessarily involves not alone the size of the obstruction, but also all the circumstances which surrounded the plaintiff at the time, and her conduct in the light of these circumstances. This is a complicated question of fact, and much more so than that of whether the defect aforesaid was actionable.

[14]   As set forth in the statement preceding this opinion the plaintiff had no knowledge of the defective condition of the sidewalk previously to the accident. Other material facts and circumstances surrounding the plaintiff at the time are also set forth in such statement. Among them is the character of the walk itself. Concrete sidewalks are intended and are reasonably presumed to be of a smooth and uniform surface. Further, the plaintiff was in a locality at the time shortly preceding the accident in which the whole of her acquaintance with it, previously, and on that occasion acquired, as the jury were warranted in inferring, also reasonably led to the impression upon her that there were no inequalities in the level of the sidewalk on which she was proceeding at the time of the accident. It was not like the situation where a person is walking

on a brick pavement, which is obviously uneven and broken up here and there at divers places by the upheaval of it by the roots of trees, where such very conditions admonish the passer-by to be unusually watchful in his lookout and careful in his step. And there was the situation mentioned in the statement preceding this opinion of the absence of testimony showing how the photographs introduced in evidence by the city were taken; in which case only a view of the locality under similar conditions as existed at the time of the accident could determine the value of such photographs as evidence. The jury could best pass upon that matter after their view. Then too there were the other circumstances mentioned in the statement preceding this opinion which bear upon the question of fact as to whether the plaintiff was exercising ordinary care immediately preceding and at the time of the accident—as to whether her failure to detect the real condition of the obstruction in the sidewalk evidenced lack of exercise by her of ordinary care. These are all subjects about which it is apparent in this case that the minds of reasonable men might differ. The very fact that the obstruction was not great and the other circumstances aforesaid; *i. e.,* of the defect only showing an unevenness of a half-inch if the glance of the eye fell upon the inner edge of the walkway with its gradual increase to two inches so that it might have been mistaken for an ordinary groove in the walk, as aforesaid, until plaintiff was immediately upon it; the sunlight in the face of the plaintiff; her attention being attracted elsewhere until so near the defect that when, from facing sunlight, she glanced back ahead of her on the walkway, more or less in shadow she may have naturally failed to detect, or have naturally looked over and beyond the defect, being unsuspicious of its character. All these, and the other circumstances in the case are peculiarly matters for the consideration of a jury and about which the minds of reasonable men may differ

in conclusions as to whether the plaintiff exercised ordinary care.

[15]    As said in 28 Cyc. 1420-1: "Whether or not the person injured by reason of a defect or obstruction exercised ordinary care and diligence at the time of the accident, depends upon the surrounding circumstances existing at that time and place, and upon the danger reasonably to be apprehended, and is ordinarily a question of fact for a jury."

As said in 4 Dillon on Mun. Corp., sec. 1719, on the subject of contributory negligence in cases such as that we have under consideration: "* * Although the facts are not controverted, yet, if different minds may reasonably draw therefrom different conclusions, the question is for the jury as one of fact, and not for the court as one of law. This statement of the law is substantially taken from the judgment of the Supreme Court of the United States, and in the author's opinion it gives the true rule on the subject." Citing *Sioux, etc., R. Co.* v. *Stout,* 17 Wall. (U. S.) 657, 21 L. Ed. 745.

As said in *Bashford* v. *Rosenbaum,* 120 Va. 1, at p. 8, 90 S. E. 625, at p. 628: "The jury's verdict was for the plaintiff, under instructions * * which submitted both the questions of the defendant's negligence and that of the plaintiff's contributory negligence to them, and after a view by the jury of the premises, allowed by the court; therefore to disturb this finding it was necessary for the trial court to have taken the view that there could be no difference of opinion amongst reasonable men as to the plaintiff's contributory negligence."

On the subject of contributory negligence the following of the cases cited for the city approach nearest in their facts to the case in judgment, namely: *Richmond* v. *Schonberger, supra,* 111 Va. 168, 68 S. E. 284; *Gosport* v. *Evans,* 112 Ind. 133, 13 N. E. 256, 2 Am. St. Rep. 164; *Lerner* v.

*Philadelphia,* 221 Pa. 294, 70 Atl. 755, 21 L. R. A. (N. S.) 614; and *Richmond* v. *Courtney, supra,* 73 Va. (32 Gratt.) 792.

The *Schonberger Case* involves a street crossing and is distinguishable for that reason, as above noted.

The other cases just cited all involve similar defects in the sidewalk, consisting of displacement of bricks. In the *Evans* and *Courtney Cases* the plaintiff's fall was caused by striking a foot against a brick projecting above the level of the surface on which the plaintiff was walking; but in both of those cases the plaintiff was well acquainted with the existence of the defect prior to the time of the accident, and both decisions turn on that fact; which differentiates those cases from that in judgment. While in the *Lerner Case* the plaintiff's fall was occasioned by losing her balance and falling on stepping into a depression in the sidewalk. There the "defect in the pavement was the displacement of some bricks," as stated in the opinion. Over how large an area does not appear from the report of the case. The opinion states that "Into the depression caused by the displacement plaintiff stepped, with the result that she fell and injured herself." The opinion then proceeds: "In bringing her action she assumed the burden of exhibiting a case clear of contributory negligence. Having testified that she stepped into the depression without having observed it, and having shown conditions which should have been sufficient, nothing intervening, to secure one exercising ordinary care from such accidents, she would be entitled to recover only as she explained in a way consistent with ordinary care on her part, how and why she failed to see what was directly before her. Failing in this, it could not be said that her injury resulted exclusively from the defendant's negligence. It is insisted upon by counsel representing her that she was prevented from seeing the depression into which she stepped by the crowded condition of the pavement at the time. No

other explanation is attempted.    Unfortunately for the plaintiff this explanation advanced by counsel is without support in the evidence."

The court entered a compulsory non-suit.

[16]    From what is above quoted from the opinion of the court in the *Lerner Case* we see that the holding is partly placed upon the ground that the burden of proof is upon the plaintiff to show affirmatively that he is not 'guilty of contributory negligence.    This is not the rule in Virginia. Here, the burden of proof of showing contributory negligence on the part of the plaintiff is upon the defendant, unless it appears affirmatively from the evidence for the plaintiff.    And further:  There were no circumstances whatever shown in evidence in the *Lerner Case* on which the plaintiff could rely as explaining the accident in accord with her exercise of reasonable or ordinary care for her own safety, other than that she was prevented from seeing the defect in the way by the crowded condition of it at the time; which proof, as the court held, failed.    The case in judgment is a very different one in this regard, as appears from the statement preceding this opinion.

On the whole, therefore, while the case is a close one on the question of contributory negligence, we are of opinion that upon the evidence in this particular case, this question was for the jury, and that there was sufficient evidence to support the verdict of the jury, had the demurrer to evidence not been interposed, in finding, in effect, that the plaintiff was not guilty of such negligence as barred her right of recovery.    Hence we must think upon this point also, as did the learned judge of the trial court, that, on the demurrer to evidence aforesaid, the question of contributory negligence aforesaid must be considered as concluded against the city.

The judgment under review will therefore be affirmed.

*Affirmed.*

PRENTIS, J., dissenting:

I am constrained to express my dissent from the conclusion of the majority in this case, because I think that conclusion is inconsistent with the controlling legal doctrine which is expressed in the opinion itself. That doctrine is that a city is not an insurer against accidents upon its streets, is not bound to keep its streets perfectly smooth and level, and that slight defects which are not dangerous are not actionable. The legal duty of the city is discharged when it exercises reasonable care to keep its sidewalks in a reasonably safe condition for pedestrians using them with ordinary care. In this case, inasmuch as there is no conflict in the evidence, and there was a demurrer to the evidence, the facts are established, and the question presented is a question of law arising out of those facts. In my view, an elevation of two inches on the outside and one-half an inch on the inside of a concrete pavement three feet wide, the pavement being otherwise perfectly smooth and free from defects, constitutes no actionable negligence which should sustain a recovery by this plaintiff, who stumbled and fell thereon not later than two o'clock in the day, when the sun was shining brightly, and there was nothing to obscure her view of this unevenness in the pavement. To hold otherwise, as it seems to me, is equivalent to holding that the city must exercise the very highest degree of care, and that the pedestrian is under no duty to observe and avoid the obvious.

*Upon a Rehearing, January 20, 1921.*

PER CURIAM.

Upon a rehearing of this cause, the court adheres to its former decision. Judges Burks and Saunders concurring in the result, and Judge Prentis dissenting.

*Affirmed.*