Gertrude A. McGuire, Appellee, v. Herbert McGannon, Appellant.

Gen. No. 37,669.

Opinion filed June 26, 1935.   Rehearing denied July 10, 1935.

McKenna, Harris & Schneider, of Chicago, for appellant.

Arthur G. Baumann, John C. Laux and Donald P. Vail, all of Chicago, for appellee.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal by the defendant from a judgment for the plaintiff entered by the court on the verdict of a jury in the sum of $2,500, recovered for personal injuries sustained by the plaintiff in an automobile accident which occurred on August 13, 1932. The plaintiff's action is based upon the provision of the statute known as Cahill's St. 1933, ch. 95a, ¶ 43 (ch. 121, sec. 243, Smith-Hurd 1933 Ill. Stat.). The material part of the statute which applies is as follows:

"Provided, however, that no person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative, in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct con-

tributed to the injury, death or loss for which the action is brought.''

The plaintiff's declaration consists of three counts. The first count alleges that on August 13, 1932, the defendant by one Angeline Antonucci, the agent of the defendant, was driving defendant's automobile in which plaintiff was riding at defendant's invitation and request; that the automobile was being driven along Crawford avenue at a point where Crawford avenue intersects 135th street, Cook county, Illinois. The breach of duty alleged is as follows:

''Angeline Antonucci, the servant and agent of the defendant, Herbert McGannon, then and there failed to keep a lookout ahead and in the direction of travel or of danger reasonably to be apprehended, and to observe and heed the warning signs and stop sign on the right side of Crawford Avenue at and near the intersection aforesaid, then and there intentionally, purposely, wilfully and wantonly, in reckless disregard for the safety of plaintiff, drove, managed and operated the said automobile in which plaintiff was riding as a guest and passenger so as to cause it to run into a ditch and embankment at the end of the pavement of said Crawford Avenue, where it is intercepted by 135th St. in the County of Cook and State of Illinois.''

Count 2 is, in part, as follows:

''That Angeline Antonucci failed to observe the warning signs and stop sign on the right side of Crawford Avenue, at and near the intersection aforesaid, and then and there drove, managed and operated the said automobile in which plaintiff was riding as a guest and passenger so as to cause it to run into a ditch and embankment at the end of the pavement of the said Crawford Avenue, where it is intercepted at 135th St.''

Count three is exactly the same as count one, except that it contains an additional paragraph setting out the guest law section of the Motor Vehicle Act, which appears hereinabove.

To the declaration, the defendant filed a plea of the general issue and a special plea denying the operation, management and control of the automobile.

From the facts in evidence in support of the pleadings it appears substantially that the plaintiff on the evening of August 13, 1932, was one of a party of four that was going to attend a dance at a golf club near Chicago; that about nine o'clock that evening the defendant and one Collins called at plaintiff's home in defendant's Oldsmobile coupe; that they then called for Miss Antonucci at her home and started to the country club; that in driving to this country club the defendant drove with Miss Antonucci sitting next to him, Collins sitting next to her on the outside, and the plaintiff sitting on Collins' lap in the front seat of the automobile. The party reached the country club about ten o'clock. They sat at a table with four or five other couples in a room adjoining the dance floor. All four of them drank gin highballs. Three pint bottles of gin were produced by Collins on the night in question, and from the record, each of the women had three gin highballs and the men had about six. They left the country club about one o'clock in the morning for home. When they left, the four of them were seated in the front seat, Collins driving. He backed the car in leaving the club house grounds, and in doing so collided with another car and knocked off the tail light on defendant's car.

There is a conflict in the evidence as to the point where Miss Antonucci started to operate the car. The facts are, however, that after a discussion by Miss Antonucci and the plaintiff, it was decided by the women that Miss Antonucci had better drive the car, and the defendant was asked by Miss McGuire whether it would be all right for the defendant to permit Miss Antonucci to drive, and upon request, the defendant made no objection and turned the car over to Miss Antonucci. From the time she took over the car for the

purpose of driving it, she was in control of the machine until the accident happened. After the car had proceeded north on Crawford avenue for a mile or so, Collins, who was seated with the plaintiff in the rumble seat, became ill and knocked on the partition of the car and asked Miss Antonucci to stop, that he was nauseated. The car was stopped and remained there for five minutes. Thereafter the car continued north on Crawford avenue until it approached 135th street. It was slightly cold on that night and clear for the middle of August, and the pavement on Crawford avenue was dry.

Both Collins and the plaintiff testified that as they approached 135th street, they felt the car bumping or vibrating, and that was the last thing they knew until they awoke in the hospital.

Miss Antonucci, the driver, testified that she had driven a car about 10 years, and had driven this car before; that she was not familiar with the country road, and was not driving as fast as she would have driven if she had been familiar with the road; that her eyesight was normal, and that she was watching the road as she drove; that she could see to the right and to the left, and that there was nothing to obstruct her view of any signs on the side of the road; that the headlights were on and that she could see 10 or 15 feet ahead; that when she was about one-half block away from the intersection, as she approached the intersection of Crawford avenue and 135th street, she saw a car coming on 135th street, with a spotlight turned on. She slowed down for the intersection as she saw the other car coming. She knew she could make the intersection before the other car came to the corner, which car was 50 yards away at the time she was 25 yards distant. She kept on going through the intersection, she did not speed up. The spotlight on the other car was pointed diagonally across so as to indicate to the driver the edge of the road. The reflection

of the spotlight was so great she could not see that the pavement ended there, and she kept going straight ahead. She crossed the intersection before the other car did. The spotlight was so bright she did not see the end of the pavement and did not realize that the pavement on Crawford avenue ended there until the car went into a ditch and she was rendered unconscious.

The defendant's testimony is that as they came to the intersection of 135th street there was a car coming from the west with a bright spotlight. They were going 30 or 35 miles an hour. They came into the intersection first, passing in front of the car coming from the west about 25 yards. He did not see any stop sign along the road, and he had never been over this particular road before. He was looking at the other car and was not looking for signs. His car did not slacken speed, but went straight ahead. They could not see the end of the road as they approached it because of this spotlight.

At Crawford avenue the following signs are placed: South of 135th street was an "End of the pavement" sign. North of this sign, at a point 300 feet from Crawford avenue, was a warning sign entitled, "Stop sign 300 feet." At Crawford avenue, there was a stop sign of plain black and yellow. Crawford avenue is a concrete pavement. These signs were located at the right side of the pavement going north, being approximately eight feet east of the edge of the pavement, and are about three and one-half or four feet high. As a result of the accident the plaintiff was injured.

The court at the request of the plaintiff instructed the jury, in effect, that for acts to become wilful and wanton it must be shown by the weight of the evidence that there was a particular intention to injure, or a degree of wilful and wanton recklessness which would authorize a presumption of an intention to injure generally on the part of the person guilty of such action;

otherwise there is no authority in law to conclude that an injury was intended or that such an act on the part of the person complained against was either wilful or wanton.

In applying this instruction to the facts, the jury no doubt disregarded that part of the instruction, because not applicable, that the driver was guilty of a deliberate intention to injure the plaintiff. No other conclusion could have been reached by the jury from the facts that appear in this record. Therefore, was there such evidence in the record as would justify the verdict of the jury upon the evidence that there appeared a degree of wilful and wanton recklessness from which the presumption would arise of an intention to injure generally on the part of the operator of the automobile in question? Of course, as stated by the court in the instruction, if from the evidence there was a failure to establish the acts of the driver as intentional, or that such acts on the part of the person complained against were either wilful or wanton, it then follows that the plaintiff could not recover in this case.

The facts are that the plaintiff and Miss Antonucci, who drove the automobile at the time of the accident, considered the condition of the defendant, the owner of the machine, and Collins, one of the party, after leaving the club house at one o'clock in the morning, and it was determined by both the plaintiff and Miss Antonucci that she, Miss Antonucci, was to drive the automobile, and this was consented to by the defendant.

As a part of this journey, the car was driven on Crawford avenue in a northerly direction. There is no evidence which would indicate that Miss Antonucci drove at an unusual rate of speed, or did anything, as a matter of fact, unwise in such operation of the automobile. However, it appears that Miss Antonucci was requested by Collins to stop the car after it had proceeded on Crawford avenue, as he was sick and

nauseated. She stopped the car and after five minutes started the automobile and again proceeded in the same northerly direction.

The record is silent as to any complaint by any of the parties of the manner in which the driver was operating the car. When the car reached 135th street, the driver noticed an oncoming car from the west. From that car a spotlight was directed in a diagonal direction across the road, and, in passing this intersection, the driver of defendant's car was blinded by the rays of this spotlight on the automobile coming in an opposite direction. The driving of the automobile over the intersection was not a reckless interference with the right of way of the oncoming automobile from the west. Up to that point there had been no act which could be charged against the driver as being wilful or wanton.

This unfortunate accident in which the plaintiff was injured occurred while crossing the end of the Crawford avenue pavement and running into a ditch, causing damage to the car and injury to the occupants, of which the plaintiff was one.

There is lack of evidence as to the condition of the roadway at the end of the concrete pavement on Crawford avenue. The only sign displayed was the one that the pavement ended at the intersection. As far as we can determine from the record, the roadway was not barricaded so as to prevent persons from driving automobiles or vehicles north on the road from the end of the concrete pavement. The inference may be drawn that the roadway beyond the concrete pavement was to be used, for the reason that there were no signs which would indicate that the roadway was blocked.

The driver of the car was selected and consented to by the parties and had had 10 years' experience in driving, but from the record it appears that she was not familiar with the road in question. This, of course, without any other circumstance in evidence, would not

indicate a wilful and wanton act in driving upon a road with which she was not familiar.

The fact that the driver of the automobile was blinded for a moment by the spotlight so that she could not see the signs on the side of the road was not of itself wilful. As a matter of fact, the operation of this spotlight on the oncoming car from the west cannot be chargeable as a negligent act of the defendant, but rather the act of the driver of this oncoming automobile, of which the defendant had no control.

In a somewhat analogous case wherein a guest instituted an action for injuries alleged to have been sustained as the result of gross negligence, the California Court of Appeals in the case of *Binns v. Standen,* 118 Cal. App. 625, 5 Pac. 637, held that the defendant in this action, being temporarily blinded by the sun, was not grossly negligent in running into an embankment while rounding a curve at 35 miles per hour.

The driver of the automobile for the defendant is charged with wilful and wanton conduct in the operation of the automobile as his agent. Apparently, from the record, the operation of the car by her was careful, and was questioned by the plaintiff only as to the intersection in question. It seems rather strange that this driver would operate the car in so wilful and wanton a manner as to be chargeable with a desire to injure the occupants of the very car of which she was the driver. This would seem to be contrary to the law of self-preservation. The mishap occurred not because of acts which were wilful or wanton, but for the reason that the spotlight interfered with her vision, and the further fact that the end of the road was not so protected that drivers of oncoming cars would be warned as to the condition of the road beyond the end of the concrete pavement.

The courts of last resort have indicated generally that the subject of wilful acts is to be considered from the standpoint of the evidence in each particular case,

but analogous cases may be applied to shed some light and to be helpful in determining whether the defendant's agent acted wilfully and with wanton recklessness at the time of the accident.

In the case of *Franzoni v. Ravenna,* 105 Vt. 64, 163 Atl. 564, the Supreme Court of Vermont said:

"Counsel agree that there can be no recovery against Ravenna unless his handling of his car amounted to gross negligence. They agree that the term 'gross negligence' is correctly defined in *Sorrell v. White,* 103 Vt. 277, 153 A. 359, and *Shaw v. Moore* (Vt.), 162 A. 373. So the rule that we are to apply is that gross negligence is higher in degree and more culpable in character than ordinary negligence—that it amounts to a failure to exercise a slight degree of care.

"Tested by this rule, the record before us fails to justify a recovery against Ravenna. That he was careless, either in getting into the two ruts he appears to have chosen, or in his persistent attempts to force his car out of them, or both, may be admitted. That he should have stopped his car long enough before he hit the truck to have avoided a collision is quite apparent. But he was all the time trying to avoid an accident. He was doing his best to accomplish that result. He made a mistake, to be sure, perhaps a series of them; but he was not so far wrong as to evoke a protest from any of his passengers, and there is nothing in the record to indicate an indifference to his duty to his guests or an utter forgetfulness of their safety."

In the case of *Jones v. Massie,* 158 Va. 121, 163 S. E. 63, in quoting the language of this case, the court said:

"The law is well settled that a person using a street or public way in the ordinary manner has the right, in the absence of knowledge to the contrary, to act on the assumption that the street or way, throughout its entire width, or so much of it as is intended for travel, is in a reasonably safe condition, and he is not re-

quired as a matter of law to be on the lookout for defects or obstructions therein. *City of Richmond v. Courtney,* 32 Grat. (73 Va.) 792; 43 C. J. 1078; *Bedford City v. Sitwell,* 110 Va. 296, 65 S. E. 471; *City of Richmond v. Rose,* 127 Va. 772, 102 S. E. 561, 105 S. E. 554.

"Viewing the facts and circumstances in the light of the established rules of law on the subject, we feel compelled to hold that, as a matter of law, Mr. Jones cannot be held guilty of that degree of negligence which renders him pecuniarily liable for the unfortunate accident sustained by Mr. Massie on the occasion in question. There is no evidence to indicate that, in failing to see the conditions at the crossing in time to avoid the injury, he 'knowingly or wantonly' added to the risks which Mr. Massie, as his guest, had assumed." See also *Biersach v. Wechselberg,* 206 Wis. 113; *Giddings v. Honan,* 114 Conn. 473.

Upon the question of agency involved in this litigation, it is apparent from the facts that at the time Miss Antonucci assumed control of the wheel to drive the car, it was with the consent of the defendant; that he made no objection, and she continued until the accident happened. The question of agency was passed upon by the jury under the instructions of the court, and we are not disposed to disturb the verdict upon that ground.

Other questions are raised in the record, but from the conclusions we have reached, as stated in our opinion, the acts of the defendant by his agent were not such wilful and wanton acts as would justify the verdict of the jury and the judgment entered by the court. Accordingly, the judgment will be reversed.

*Judgment reversed.*

WILSON and HALL, JJ., concur.